## THE PEOPLE *v.* THE HOME INSURANCE COMPANY.

TAXATION OF UNITED STATES BONDS.—The bonds of the United States, issued in pursuance of the Acts of Congress, are not subject to taxation.

TAXATION OF STATE BONDS.—Bonds of the State of California are personal property within the meaning of the term "personal property" as used in the Revenue Act, and are subject to taxation.

TAXATION OF BONDS IN THIS STATE OWNED BY A FOREIGN CORPORATION.—The bonds of this State owned by a foreign insurance company doing business in this State, and deposited with a banker, in pursuance of the Act "to tax and regulate foreign insurance companies doing business in this State," and under the control of an agent of the company, are subject to taxation in this State.

STATE BONDS ARE PROPERTY.—The bonds of this State which are owned by a foreign insurance company, but kept in this State, in accordance with the Act of the Legislature requiring such companies to deposit bonds here as security for their liabilities, are a portion of the capital of the company, and are property in this State within the meaning of the Revenue Act.

ASSESSMENT OF PERSONAL PROPERTY.—Personal property in this State belonging to a non-resident, may be assessed to such owner, notwithstanding he is a non-resident.

SAME.—If personal property in this State belonging to a non-resident is in the possession of a trustee or agent, it may properly be assessed to the agent or trustee having it in possession.

SAME.—An error made by assessing personal property to the wrong owner or claimant, under the Revenue Act of 1857, and Acts amendatory thereof, does not affect the validity of the assessment.

DESCRIPTION OF BONDS ASSESSED.—Bonds of this State belonging to a foreign insurance company, but deposited in this State in accordance with law, when assessed for taxes, are sufficiently described by being designated " money and bonds deposited as per statute."

TAXATION OF FOREIGN INSURANCE COMPANIES. — The percentage on premiums which foreign insurance companies doing business in this State pay to the State under the Act to regulate foreign insurance companies doing business in this State, is not a substitute for taxation.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Delos Lake,* and *Robert F. Morrison,* for the People.

It is admitted that in point of fact the bonds are actually here in the City of San Francisco, but a legal fiction is invoked by which they are transferred to the possession of the insurance company in the City of New York.

A brief examination of the existing law, (and it is similar in its provisions to former laws on this point of general taxation,) will abundantly prove the intention of the Legislature.

Section two of this Act speaks of chattels, debts, the capital stock of corporations, etc. All these are taxable, and the bonds on which the tax was levied in this case are embraced within two, at least, of the above designations. They are both chattels and debts, and they are also included in the term personal property, which shall include all property included in section two, except real property.

The following definitions abundantly support this view :

" CHATTELS—A term which includes all kinds of property, except the freehold, or things which are parcel of it. It is a more extensive term than goods and effects." (2 Kent, 401 ; 1 Bouvier's Law Dictionary, 224.)

" Chattels personal are, properly speaking, things movable, which may be annexed to or dependant upon the person of the owner, and may be carried about with him from one

part of the world to another." (*Adams* v. *Hackitt*, 7 Cal. 203; *City of New Albany* v. *Meekin*, 3 Ind. 483; Story's Conflict of Laws, 550; 21 Illinois, 62; *International Life Assurance Co.* v. *Commissioners of Taxes*, 28 Barb. 321; *Mutual Insurance Co.* v. *Supervisors of Erie*, 4 Com. 442.)

*Doyle & Barbour*, for the Home Insurance Company.

The State bonds are not assessable here, because they are mere evidences of debt, having no intrinsic value in themselves, but the mere representatives of a claim which has a certain value. The debt which they represent is owned in New York. They do not therefore constitute property within this State, and cannot be assessed here.

The jurisdiction of a State for purposes of taxation, as for all others of sovereignty, is from its own nature limited to its territorial extent; it can no more impose taxes on persons or property not within its territorial jurisdiction, than it can enact laws, render judgments, or otherwise exercise its judicial, executive, or political power over persons or property without its limits. It is well settled that debts in judgment of law follow the person of the owner, and are deemed to be situated wherever he is domiciled. (Story's Conflict of Laws, Sec. 362, 362 *a;* *Lord* v. *Arnold*, 18 Barb. 105; *People* v. *Park*, 23 Cal. 138; *People* v. *Eastman*, 25 Cal. 601.)

Under our system of taxation, two classes of taxable personal property are recognized. The one having a local *situs*, and the other the *situs* of which is determined by the domicil of its owner.

Obviously, if the company had its principal office and place of business in another county of the State, the fact that it had these bonds lying in the vaults of bankers in San Francisco would not subject it to be taxed here on them, and this because the *situs* of the company would draw to it that of the bonds. Now if that be true with reference to the various counties of the State, it seems difficult to suggest any reason why it is not equally true of residence, or *situs*, in or out of

the State. *Situs,* or locality, if predicable of the State at all, must be of some particular county in the State.

The assessment being incorrect in point of fact, in designating these bonds as money, irregular in form, in lumping under one head moneys and bonds, and unauthorized by the terms of the statute, is void. (*Falkner* v. *Hunt,* 16 Cal. 172.)

If the bonds in question were taxable at all under the law of this State, they were assessable only to the agents of the company, who had the charge, possession, and control of them, and not to the company itself—in this case to Wells, Fargo & Company. (*Van Rennselaer* v. *Cottrell,* 7 Barb. 127; *Wilson* v. *Mayor,* 1 Abbott Pr. R. 26; *Lord* v. *Arnold,* 18 Barb. 104.)

The Legislature has made these companies the subject of a special tax law which must be deemed to constitute a system complete in itself, and excludes all general enactments on the subject, even if they could otherwise be deemed applicable to the class of persons in question. It cannot be supposed that it was the object of the Legislature to subject these corporations to two different systems of taxation, and subject them to a double burden. (See *N. Y. E. R. R. Co.* v. *Sabin,* 26 Penn. 243.)


By the Court, SAWYER, J.

The Home Insurance Company is a foreign corporation created by, and existing under the laws of the State of New York, engaged in the business of insuring against loss by fire. Said company has an agency established at the City of San Francisco, under the management of Bigelow & Brother, who are duly authorized to act for the company in the ordinary business of the corporation transacted in the State of California. All the acts required by the Act of 1862, " To tax and regulate foreign insurance companies doing business in this State," as amended by the Act of 1864, have been performed. In pursuance of the provisions of the Act of 1864, the company made a special deposit with Wells, Fargo & Company,

bankers, who were approved by the Controller, of twenty-five
bonds of the United States, issued in pursuance of the Acts of
Congress, of one thousand dollars each, and fifty bonds of one
thousand dollars each, issued by the State of California, in
pursuance of "An Act to provide for paying certain equi-
table claims against the State of California and to contract a
funded debt therefor," approved April 28th, 1857; all of
which bonds, or the debts represented thereby, belonged to
the said Home Insurance Company.     These bonds were
assessed in the City and County of San Francisco for State,
and city and county taxes to "Home Insurance Company of
New York, Bigelow Brothers, agents," as "money and bonds
deposited as per statute," at fifty thousand dollars, the tax
thereon being one thousand four hundred and ninety dollars.
An agreed case having been made, stating the foregoing, among
other facts, and the question submitted to the District Court
of the Fourth Judicial District, whether the said company is
lawfully taxable and taxed in respect to the said bonds, it was
held by the Court, that the said twenty-five bonds of the
United States were not subject to taxation, but that the fifty
bonds of the State of California were properly taxable and
taxed.     Judgment was thereupon entered in favor of the Peo-
ple for the sum of nine hundred ninety-three dollars thirty-
three cents, the amount of the tax levied upon the last named
bonds, and against the People as to the balance of tax claimed.
Both parties appealed, but the People seem to have abandoned
their appeal, as nothing is said about the bonds of the United
States.     It seems to be now settled that the twenty-five United
States bonds are not subject to taxation.   (*Bank of Commerce
v. New York City*, 2 Black, 620.)     But are the fifty bonds of
the State of California in any form subject to taxation ?     That
the Legislature has the power to tax these securities, there can
be no doubt.     So much seems to be conceded.     The only·
question is, has it done so ?     The Revenue Act provides that;,
"all property, of every kind and nature whatever, within the·
State shall be subject to taxation, except," etc.; but the bonds·

68

in question are not included in the specified exceptions.    Personal property, for the purposes of taxation, is then classified and defined by the statute.    The second class embraces "chattels of every description;" the fourth, "all money at interest or loaned, whether secured by pledges, mortgage or otherwise; all solvent debts exceeding what may be due from such person, corporation, association, or firm."    Eighth—"The capital stock of all corporations, companies, associations, firms, or individuals doing business or having an office in this State."    Ninth—"All other property, not real estate, which is not otherwise taxed."    That these bonds, or that which is evidenced by them, would be property which could be referred to some one or more of these classes, if the owner resided in this State, there can be no doubt.    But it is claimed that these bonds are mere evidences of debt, having no intrinsic value; that they are mere representatives of a debt owned in New York; that they have no *situs* apart from the domicil of the owner, which is located without the State; and that, therefore, they do not constitute "property *within* this State."    It is true, as a general principle, that, personal property follows the owner, having no *situs* apart from the owner, and is subject to the law of his domicil; but this is a fiction of law, adopted for the purposes and incidents of contracts and descents.    It may still, for the purposes of taxation and judicial proceedings, be affected by the law of the place where it is in fact situate.    This general principle applies to all personal property, whether corporeal or incorporeal.    Story says: "In the next place, let us consider the subject of jurisdiction in regard to property.    It will be unnecessary to discuss the matter at large as to personal property, since the general doctrine is not controverted, that although movables are, for many purposes, to be deemed to have no *situs* except that of the domicil of the owner, yet, this being but a legal fiction, it yields, whenever it is necessary for the purposes of justice, that the actual *situs* of the thing should be examined.    A nation, within whose territory any personal property is actually situate, has as entire dominion over it, while therein, in point of sovereignty and jurisdic-

tion, as it has over immovable property situate there.   It may regulate its transfer and subject it to process and execution, and provide for and control the uses and disposition of it, to the same extent that it may exert its authority over immovable property.   One of the grounds upon which, as we have seen, jurisdiction is assumed over non-residents is through the instrumentality of their personal property, as well as of their real property, within the local sovereignty.   Hence it is, that, whenever personal property is taken by arrest, attachment or execution within a State, the title so acquired under the laws of the State is held valid in every other State; and the *same rule is applied to debts due to non-residents, which are subjected to the like process under the local laws of a State.*"   (Story on Con. of Laws, Sec. 550.)

*Bonds of this State kept here but owned abroad are liable to taxation here.*

Whatever the legal fiction may be as to the *situs* of personal property, such as horses, coin and other things of a corporeal nature, they have an actual *situs* which subjects them to the jurisdiction of the Government where that actual *situs* is; and the same is equally true of things incorporeal.   Whether tangible or intangible, the rule is, or may be, the same.   Debts, whether evidenced by writing or not, may be reached by process of attachment and garnishment under the laws of the domicil of the debtor, and they may also be thus reached under statutory provisions for the purposes of taxation.   In the language of Mr. Chief Justice Lourie, in *Finley* v. *the City of Philadelphia*, 32 Pa. St. R. 381 : " There is nothing poetical about tax laws.   Wherever they find property, they claim a contribution for its protection, without any special respect to the owner or his occupation."   Whether we consider the subject of taxation in this case as " money at interest, or loaned," or " solvent debts," and the bonds as the mere evidence of indebtedness and of no intrinsic value in themselves, or whether they are to be regarded as " capital stock," or, for the purposes of taxation, as in themselves a species of prop-

erty, the thing itself is actually within the jurisdiction of the State. If the bonds themselves are property, they are of course " within the State," but if only evidence of the existence of property in some other form, they represent the thing whatever it is ; they are the outward symbols by which its actual presence is manifested, and by means of which it is manipulated and actually controlled, and through which the State can actually subject it to its jurisdiction. For this very purpose the State required these bonds to be deposited within its reach, as a condition precedent to the transaction of any business in the State by the owner. And the Act itself provides, that, " all stocks and bonds in the hands of such banker or bankers so approved by the Controller *shall be liable to attachment or seizure under execution in any suit or judgment against any such company or association.*" And when so attached or seized other bonds must be substituted which " shall equal in value *what may have been sold.*" By seizing and selling the bonds, even if not in themselves property, the thing symbolized or represented by them is seized and sold, and the title of the owners wholly divested and transferred. The State of California itself is the obligor and debtor, and the debtor may, therefore, be regarded as being within the State. Whatever the legal fiction as to the *situs* of these stocks, or the thing represented by them, for certain purposes, may be, it is plain, that there is an actual *situs* in the State, and that the thing constituting the property is within the State and subject to its jurisdiction. We think, therefore, it is " property *within* the State," within the meaning of the provisions of the Revenue Act. And this construction is also supported by authority. The question was made and decided in *Catlin* v. *Hull*, 21 Vermont, 156. The revenue laws of Vermont provided that personal estate, within the meaning of the Act, should include " all debts due from solvent debtors, whether on account, notes or contract, bond, mortgage or other security." Taxes were assessed in the Town of Orwell, in the State of Vermont, upon property belonging to Thomas A. Hammond, a resident of the City of New York. " This prop-

erty consisted entirely of promissory notes, or choses in action, against individuals in this State, (Vermont,) payable to Thomas A. Hammond. These notes were placed by Hammond in the hands of plaintiff, (one Catlin,) who was a resident of Orwell, as his agent, to be managed by the plaintiff, with a discretionary power to keep them on interest or collect and reloan, as should be most beneficial for Hammond; and most of the notes had been collected by the plaintiff and the money reloaned previous to the making of the grand list on which the taxes in question were assessed; and when new loans were made all notes therefor were payable to Hammond." The moneys had been thus collected, loaned and reloaned by plaintiff, as agent, from February, 1846, until the assessment of the tax in question in 1847. The taxes were assessed against Catlin as "agent of Hammond," separate from Catlin's individual property. The same question as to the *situs* of a debt within the State was made as in this case. The Court say, (p. 158) : "It is insisted upon this part of the case, in the first place, by the plaintiff's counsel, that the property of Hammond, of which the plaintiff has the care as his agent, cannot be considered as legally existing in this State; and that this is an attempt to tax property, when neither the property nor the owner is within the State and within the jurisdiction of our laws. We think, however, that this doctrine is quite too refined and artificial to be put to any practical use. The case shows this property to have originally belonged to the father and mother of Hammond, who formerly resided in this State, and died here, and that he inherited the same from them, and that the property has never been removed from this State—unless Hammond may at some time have carried the notes to New York; that the debtors reside in this State, and that the notes are in this State, in the hands of the plaintiff. Of course this property is so far here that it could be attached here and held on debts against Hammond ; and if it is not to be treated as actually existing here, it would be very difficult to tell where it is in fact situate." The property was held

to be "*within* the State," for the purposes of taxation, and properly taxed in the hands of the agent. Again the question as to the *situs* of personal property for purposes of taxation was thoroughly discussed and the true principle stated in *Hoyt* v. *Com. of Taxes*, 23 N. Y. 225. Personal property actually in New Orleans, owned by Hoyt, a resident of New York, was assessed in New York, the Commissioners having "decided that personal property had no *situs*, but follows the person." And the question arose as to the construction to be given to the words "*within this State*," with reference to personal property, in the provisions of the revenue laws of New York: "All lands and all personal estate *within this State*." The Court say (p. 227): "It is said, however, that personal estate, by fiction of law, has no *situs* away from the person or residence of the owner, and is always deemed to be present with him at the place of his domicil. The right to tax the relator's property, situate in New Orleans and New Jersey, rests upon the universal application of this legal fiction; and it is accordingly insisted upon as an absolute rule or principle of law, which, to all intents and purposes, transfers the property from the foreign to the domestic jurisdiction, and thus subjects it to taxation under our laws. Let us observe to what results such a theory will lead us. The necessary consequence is, that goods and chattels actually within this State are not here in any legal sense or for any legal purpose, if the owner resides abroad. They cannot be taxed here, because they are with the owner who is a citizen or subject of some foreign State. On the same ground, if we are to have harmonious rules of law, we ought to relinquish the administration of the effects of a person resident and dying abroad, although the claims of domestic creditors may require such administration. So, in the case of the bankruptcy of such a person, we should at once send abroad his effects, and cannot consistently retain them to satisfy the claims of our own citizens. Again, we ought not to have laws for attaching the personal estate of non-residents, because such laws necessarily assume that it has a *situs* entirely distinct from the owner's domicil. Yet

we do in certain cases administer upon goods and chattels of a foreign decedent; we refuse to give up the effects of a bankrupt until creditors here are paid; and we have laws of attachment against the effects of non-resident debtors. These, and other illustrations which might be mentioned, demonstrate that the fiction of the maxim *mobilia personam sequuntur* is by no means of universal application. Like other fictions it has its special uses. It may be resorted to when convenience and justice so require. In other circumstances the truth and not the fiction affords, as it plainly ought to afford, the rule of action. The proper use of legal fictions is to prevent injustice, according to the maxim, *in fictione juris semper æquitas existat.* 'No fiction,' says Blackstone, 'shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience, which might result from the general rule of law.' * * * * If, then, proceeding on the true principles of taxation, we subject to its burdens all goods and chattels actually within our jurisdiction, without regard to the owner's domicil, it must be understood that the same rule prevails everywhere. If we also proceed on the opposite rule, and impose the tax on account of the domicil, without regard to the actual *situs*, while the same property is taxed in another sovereignty by reason of its *situs* there, we necessarily subject the citizen to a double burden of taxation. For this no sound reason can be given," (p. 229.) The Court further illustrates these views by examples. It is true that the exigencies of that case only required the Court to determine the *situs* of personal property of a corporeal nature. But the general legal fiction knows no distinction between property corporeal and incorporeal. And the views of the learned Judge upon the latter are clearly indicated in the following passage : " This conclusion is intended to embrace only property which is visible and tangible, so as to be capable of a *situs* away from the owner or his domicil ; and I do not consider the question in reference to personal estate of a different description. It must be within this State in order to be subject to taxation, for so is the statute ; but that may be true of choses in action and

obligations for the payment of money due to a creditor resident here, from a debtor whose domicil is in another State. *If the securities are separated from the person and domicil of the owner, and are actually in the hands of an agent in another State for collection, investment and reinvestment there, it may be that capital thus situated should be regarded as foreign and not domestic, in the absence of any special statutory provision intended for such a case,*" (p. 240.)

In the case now under consideration the securities *are* separated from the owner and his domicil, and in the hands of an agent in this State, and in the character of property, by the express provisions of the Act requiring the deposit, subjected to the jurisdiction of the State.    The case of *Catlin* v. *Hull,* 21 Vt., is cited by the learned Judge in *Hoyt* v. *Commissioners of Taxes* with approbation.    The case of *Wilson* v. *Mayor of New York*, cited by the Home Insurance Company, is also referred to and disapproved, (page 236.)    The other cases cited from the New York Reports by the Home Insurance Company depend upon peculiar statutory provisions, and have no application ; and it is clearly shown in the case of *Hoyt* v. *Commissioners of Taxes*, that, whenever property of foreign corporations of the class in question has escaped ·taxation under the laws of New York, it has resulted, not from the fact that the bonds or property itself were not " property *within* the State," within the meaning of the statute, *but from defects in the details of the machinery for assessing and collecting the tax.*

But there seems to be a still stronger reason for regarding State bonds as a species of property within themselves, than in the case of notes and other evidences of debt.    They are given for moneys due from the State, it is true, and in a legal sense are evidences of debt.    But they are treated in business transactions as other articles of personal property—bought and sold in the market daily at the Stock Board—have a regular market value at all commercial centres, which varies, or may vary from day to day, like other staple articles of commerce. They are purchased for investment, as a man purchases land, and really form a separate and distinct species of estates.    So bank

bills are but promises to pay—promissory notes or evidences of indebtedness. But they are used as money, and, like State stocks, in the commercial world have acquired a character different from that of mere evidences of debt. For purposes of taxation, as in business transactions, bank bills would be regarded as money, and not as evidences of solvent debts.

*Bonds kept by an insurance company are part of its capital stock.*

But these bonds are really a part of the capital stock of the corporation invested in its business. Bonds of the City of Buffalo deposited with the Controller of New York by a foreign insurance company under a law similar to our own, were held to be included in the terms personal estate under the statute of New York, relating to taxation, in the *British Com. Ins. Co.* v. *Com. of Taxes,* 18 Abbott, 130 ; and it was further held that they constituted a part of its capital stock used in its business. The Court say (p. 130) : " The other question is, whether the plaintiffs are liable to be taxed upon the bonds of the City of Buffalo deposited with the Controller. There can be no doubt but that those bonds are included under the term ' personal estate,' as used in the statute ; and the only question which can arise is whether it is property invested in any manner in the business which they carry on. Upon this point there can be but little doubt. The statute prohibits any foreign corporation from carrying on the business of life insurance until such company has deposited with the Controller securities to the amount of one hundred thousand dollars for the benefit of the policy holders of the company. (Laws of 1853, Ch. 463, Sec. 15.) The deposit with the Controller is necessarily made in connection with the business of the company—without it they can do no business ; and it is so deposited as to be security to those who may hold policies of the company. It is, therefore, used in the business of the company, and, in fact, forms its capital in this State, which is liable to the creditors, and comes within the definition of capital, as defined in *The Mutual Insurance Company* v. *Supervisors*

*of Erie*, 4 Comst. 442. These securities so deposited with the Controller, form the same kind of capital as that of a domestic corporation incorporated for a similar purpose, in which the capital is the security for those who deal with it. Neither is actually invested in business and used for that purpose, but both form the basis on which the business is transacted, and the security from which payment of claims is to be enforced." (See, also, *Bank of the Republic* v. *County of Hamilton*, 21 Ill. 62 ; and *Bank of Commerce* v. *New York City*, 2 Black, 620.) It was, however, held to be taxable in New York City, because the law expressly required personal property of companies to be taxed at the place of their principal business office. We think the bonds, or at least that which is symbolized or represented by them, are "*property within this State*" within the meaning of the Act. And this view is not in conflict with that adopted in *People* v. *Park*, 23 Cal. 188, and *People* v. *Eastman*, 25 Cal. 601. In those cases the owner resided in the State, and there was no occasion to consider whether the actual was different from the fictitious legal *situs* of the "money loaned," or "solvent debt," and, the owner being a resident of the State, it was held that the proper place to tax this species of property, under the statute, was his place of residence.

There does not appear to be any force in the argument that this property cannot be taxed because the owner is not an inhabitant of some county in the State. This is attempted to be inferred from the provision that real estate may be assessed to unknown owners, while it is claimed that there is no such provision as to taxing personal property irrespective of ownership. If there is any defect in this respect, it is not because the property is not taxable, but because there is some defect in the details of the machinery by which the tax is to be apportioned and collected, and we think there is no defect in this respect. The law itself levies the State tax and authorizes the Board of Supervisors to levy the county tax, and directs the tax to be collected. The tax having attached by virtue of the law, the rest relates to apportionment and col-

lection. For this purpose section two provides, that "between the first Monday of February and the second Monday in March in each year, every person, corporation, association, company or firm, owning, etc., or *having possession, charge or control of* \* \* \* any personal property situate, or being within the county, shall deliver to the City and County Assessor, etc., a statement of all \* \* \* personal property, etc., owned, etc., or which is in the *possession, or under the control of such person, firm*," etc. It further provides that "between the first Monday in March and the first Monday in August, etc., the Assessor shall ascertain, etc., names of all persons, corporations, etc., having the possession, charge, control of, etc., any personal property, etc.; and he shall list or assess all such \* \* \* personal property *to the person, firm, etc., owning it or having the possession, charge or control of it, if known to him.*" And further, "provided, all real and personal property shall be assessed to a person, firm, etc., if any owner or claimant shall be known to the Assessor, and to all owners and claimants of any interest, present or future, therein, or any lien upon the same, *and no error in regard to such owner or claimant shall in any way affect the validity of such assessment.*" (Laws 1859, p. 345, Sec. 2.)

We do not see why this detailed mode of proceeding does not fully cover the case. No good reason is apparent for not assessing it, under this provision to the real owner, when known, although a non-resident. But there is no necessity of assessing it as non-resident estate, and personal property is not usually so assessed. In *Hoyt* v. *The Commissioners of Taxes*, 23 N. Y. 232, it is further said: "Again. I have observed that personal property is not in any case taxed as 'non-resident' estate. But it does not follow that such property may not be assessed here, although the true owner resides elsewhere. The posssession of chattels is never vacant, as may be the case in respect to lands. Where it is not in the hands of the owner, it is usually held by some one else, under some agency or trust, and the statutes which have been referred to are comprehensive enough to reach it in most cases when

actually situated here, notwithstanding the foreign domicil of the general owner. All personal estate within the State is liable to taxation. *It may be within the State in the possession or under the control of a trustee, while the beneficial owner is a resident abroad ; and in such case the assessment is to be against the person having the special interest or control. The actual* situs *and control of the property within the State is the condition which subjects it to taxation.* The owner will of course be assessed if he resides here and has it under his own control ; *if he resides in another State, the result is reached by charging his agent or trustee in the actual possession.*"

In this case the statute certainly provides for assessing the property to the person or firm, etc., *having it in possession or under control, and he is the "inhabitant"* mentioned in the statute, if an inhabitant be necessary. And it further provides that the assessment of personal, as well as real property, may be assessed to "*all owners and claimants,*" etc., "*and that no error in regard to such owner, or claimant, shall in any way affect the validity of such assessment.*" The property, in this instance, was assessed to both the owner and Bigelow Brothers, as their agents having the control of the property. We think that there is no force in the objection that, if liable to be assessed, the bonds should have been assessed to Wells, Fargo & Co. Possibly they *might* have been so assessed, but it does not therefore follow that they *must* be. That firm was simply a depositary, having no powers over the bonds except to keep them as a "special deposit." Except so far as the purposes of security are concerned, the bonds were, through its own agents, still under the control of the company owning them. It was to be permitted "to collect the interest or dividends on its bonds or stock so deposited, and from time to time withdraw any of such securities, on depositing with such banker, or bankers, etc., other like securities, or stock, the value of which shall be equal to the value of such as may be withdrawn." (Act to regulate foreign insurance companies, etc., Section 8, as amended in 1864.) The substantial control, then, for all purposes not inconsistent with the

objects for which they were deposited, rested with the agents of the company. But if there was an error in this respect, we have seen, that it *shall not " in any way affect the validity of the assessment."*

Whether the property might have been classed under any one, or all of the heads, " money loaned," " solvent debts," " capital stock of a corporation, etc., doing business or having an office in this State," or " other property not real estate," we think it was sufficiently described in the assessment as " money and bonds deposited as per statute." Money is not a very apt term by which to designate the property. But the object of the description is simply to identify the property assessed with reasonable certainty. The whole description pointed directly and in terms that could not be misapprehended by Bigelow Brothers, to the precise property intended.

But one other question remains for consideration. It is insisted that the percentage on premiums, etc., required to be paid by the Act under which the company is doing business in this State, is intended to be a substitute for, and in full of, all taxation. We do not think so. There is nothing in the Act to indicate any such intention. If the company should, for the purposes of its business, purchase a lot and erect a costly building thereon, to be used so far as required as an office, and the rest to be rented, it would hardly be claimed that such real estate would be exempt from taxation under the provisions of the Act. Besides, it is manifest from the provisions of the Act that it was not contemplated that the bonds of this State required to be deposited should be exempt from taxation ; for section seven, in express terms, says, that they shall be stocks of this State " *that are not exempt from State taxation.*" We can see no substantial reason for requiring that class of stocks, if it was not contemplated that they should be subject to taxation.

The judgment is affirmed.