State ex rel. DaPonte vs. Board of Assessors et al.

## No. 8884.

### THE STATE OF LOUISIANA EX REL. L. B. DAPONTE VS. THE BOARD OF ASSESSORS ET AL.

The mandate of the Constitution, that "all property shall be taxed, etc." is a substantial repetition of the language employed in the former Constitutions of 1864 and 1868. Under those Constitutions this mandate was always construed and executed as not applying to State or municipal bonds; and we are bound to assume that the Convention of 1879 employed the same language with a like intent.

In the absence of express language in the Constitution, or law subjecting such securities to taxation, the action of the assessors in listing them to be taxed is an attempt to impose a tax without legislative or constitutional authority.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor,* J.

*Blanc & Butler* for the Relator and Appellant :

1. The means and instruments whereby a government conducts its affairs, or performs its functions, are not objects of taxation for and on behalf of such government. Cooley, Taxation, pp. 130, 131; Burroughs, Taxation, p. 505; Cooley, Const. Lim. p. 482.

2. They are not within the grasp of the intent of laws designating the objects of taxation. *Supra, Ibid.* Cooley, Taxation, 131 ; 17 Wall. 329.

3. So a law directing the taxation of all property will not, for this reason, include public property, nor any of the means, appliances or instruments of the government. Cooley, Taxation, 131 ; 17 Wall. 329; Dillon, Mun. Corp. 3d Ed. §§ 773, 774 ; 1 Swan. 269.

4. Government bonds or contracts for the payment of money is an exercise of the borrowing power, and is a use of the public credit. Credit, contracts to pay money, bonds, the exercise of the borrowing power, are one. 27 N. Y. 400 ; 30 Mo. 138; 39 Barb. 427 ; 23 Ind. 141; 18 Wis. 140; 18 Ind. 467; 1 Nev. 271; 39 Vt. 48; 52 Penn. 9; 38 Mo. 458; Bump's Notes on Constitutional Decisions, p. 25.

5. And these constitute a great and most important means or instrument of government. Ibid.

6. These bonds—this borrowing power—this credit—are not, therefore, within the grasp of the intent of any general law of taxation. 50 Georgia, 387, City of Augusta vs. Dunbar ; Cooley, Taxation, pp. 130, 131.

7. Taxation of government bonds in the hands of private persons, under the pretext of taxing private property, is the taxation of public credit, and a burden on the borrowing power. 17 Wall. 329 ; Murray vs. Charleston, 6 Otto, 446; Weston vs. Charleston, 2 Peters, 464.

8. The laws regarding the objects of taxation refer not to public but to private concerns. Dillon, Mun. Corp., 3d. Ed., §§ 773, 774; 34 Cal. 43 ; 1 Swan. 269.

9. From the above has resulted the rule that, admitting the power of a state to tax its own bonds and those of its municipalities, such intent must be *expressed* and *specified.* 50 Ga. 387; Dillon, Mun. Corp. § 773, 3d Ed.

10. Therefore, he who wishes to include government bonds or credit among the objects of taxation, is seeking to establish an exception to the rule or law in relation thereto, and must point to an express and specific statute so ordering.

11. The statute and law pointed out by the defendant not only contains no such expression, but in enumerated bonds generally, as objects of taxation, is careful to limit the designation to "*bonds liable to taxation ;*" therefore, instead of there being any implied direction to include government credit, here is a clear exclusion by implication. Acts 1882, No. 96, Sec. 1.

652     SUPREME COURT OF LOUISIANA,

State ex rel. DaPonte vs. Board of Assessors et al.

12. It is conceded that the State cannot tax her own bonds nor the city those issued by or for it, but it is said the State may tax the bonds issued by its municipalities. The foregoing principles and authorities are entirely opposed to such a view.

13. In truth, a city bond is a contract for which the State is herself responsible. The city is only an agency of the State, organized to govern in a particular locality for the State, with no powers but those given by the State, and which powers may at any time be withdrawn by the State. Bump's Notes on Constitutional Decisions, p. 205; 15 B. Mon. 642, Louisville vs University; 17 Wall. 622, 328; 11 Wall. 113; Cooley, Taxation, 131.

14. The contracts of an agent are those of the principal. City bonds are contracts solely entered into by authority and direction of the State, for purely public purposes, on behalf of the people and for their good; their terms are prescribed by the State, their purposes designated by the law, their amount, interest and terms alike arranged by the State, and their payment provided for by the State by an exercise of the sovereign power of taxation. It was unnecessary for the law to say in words that they are contracts of the State, though this truth is proclaimed in the Act of 1882, p. 68, Sec. 10, Ibid; 5 Cal. 288; Cooley, Taxation, p. 102.

15. Therefore, the rules which defeat an attempt to tax a bond issued directly by the State, are alike applicable to the public contracts made through its auxiliary governments.

16. If it is intended that public contracts, public credit or public bonds shall be taxed, it must be expressed in the act authorizing such contracts or bonds; otherwise, the bonds are taken under the rule that they are not of the objects of taxation. To make the contracts, and then tax them, is to impair the obligation, to make an unconditional payment of a fixed and absolute sum of money, principal and interest.

17. The taxation of bonds is a tax on the contract itself, imposes a burden thereon, affects their value. Weston vs. Charleston, 2 Pet. 468; Murray vs. Charleston, 6 Otto, 445; 12 Otto, Hartman vs. Greenhow.

18. Any measure which affects the value of a contract or in any manner changes or burdens it, impairs the obligation and violates the Constitutions of the United States and of the State of Louisiana. 8 Wheat. 1; 13 Mass. 1; 2 How. 608; 12 Miss. 439; 10 Ga. 190; 10 Cal. 563; 9 Cal. 81.

19. A contract is not to be impaired at all. There is no question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force. 6 How. 301; 12 Miss. 28; 16 Wall. 314; 43 Ga. 547; 3 Wash. 313; 4 Hall, L. J. 502; 11 Mo. 344.

20. The power to tax includes the power to destroy. Taxation is a subtle and favorite mode of attempting to violate contracts; and is particularly violative of the government's promise to pay money, since, by such a promise, not only is the power to tax not reserved, but "*the contract should be regarded as an assurance that such power will not be exercised.*" Murray vs. Charleston, 6 Otto, p. 445; 2 Pet. 468; 4 Wheat. 432.

21. The true rule is, that until the government has complied with its promise, and paid the money, reduced it into the possession of the public creditor, and so mingled it again with the general mass of private property, which it is the office of government to protect, no taxation can be imposed. Murray vs. Charleston, 6 Otto, 446; Hamilton's Works, vol. 3, p. 514.

The "railroad and consolidated bonds" of New Orleans are specially declared to be exempt from taxation. Acts 1856, No. 164; Acts 1860, No. 3. This is a special or particular enactment, which has not been repealed by the general law cited by the defendant, or any general enactment on the subject of taxation. General do not repeal special statutes. Sedgwick, Construction of Laws, 19; New Orleans vs. Poydras Asylum, 33 An. 854, and authorities there cited; Blaine vs. Baily, 25 Ind. 165; 44 An. 114.

The exemption of the Acts of 1860 and 1856 enter into and form part of the contracts. No particular acceptance of said acts was necessary. All holders and purchasers of the contract hold or buy on the faith of the laws relating to the contracts.

*J. C. Egan,* Attorney General, for Respondents and Appellees:

1. Bonds issued by the City of New Orleans are property. 30 An. 876; Burroughs on Taxation, p. 51.
2. All property shall be taxed in proportion to its value. Art. 203 of the Constitution.

*Chas. F. Buck,* City Attorney, on the same side.·

The opinion of the Court was delivered by

FENNER, J. The important question presented in this case is: whether the municipal bonds of the City of New Orlean's are subject to taxation by the State and City, or by either.

The Constitution of 1879, Art. 203, declares that "all property shall be taxed in proportion to its value," and Art. 207 provides: "The following property shall be exempt from taxation, and no other," etc., not mentioning municipal bonds, nor State bonds.

The Revenue Act No. 96 of 1882 directs, in general terms, all property, not exempted by the Constitution, to be taxed, and then, proceeding to enumerate the objects, mentions, among other things, "rights, credits, *bonds liable to taxation, etc.*"

Acting under this authority, the assessors have listed for taxation municipal bonds of the City of New Orleans held by relator.

The argument of defendants in support of the assessment is reducible to a simple syllogism, in these terms: The Constitution directs that all property, not specially exempted, shall be taxed; municipal bonds are property and are not specially exempted; *ergo* they must be taxed.

The relator concedes that such bonds are, in a general sense, property; but he resists their subjection to taxation on various grounds, of which the two following are the most prominent:

1st. That they do not fall within the intent and meaning of the word *property,* as employed in Articles 203 and 207 of the Constitution, or of the same word, or of the words, "*bonds liable to taxation,*" in the Revenue Act of 1882.

2d. That such taxation would impair the obligation of the contracts evidenced by the bonds, and thus violate the Constitution of the United States.

### I.

This is the first time in the history of Louisiana that an attempt has ever been made to subject municipal bonds to taxation. If they are liable to taxation to-day, they have been so liable from the foundation of the State. From 1864 to the present time, our successive Constitutions have contained the mandatory provision: "*All* property *shall* be taxed in proportion to its value, to be ascertained as directed by law. The

general assembly shall have power to exempt from taxation property actually used for church, school, or charitable purposes." Constitution 1864, Article 124; Constitution 1868, Article 118.

It was held repeatedly by this Court, that the legislative power of exemption was confined and limited within the cases enumerated.

Thus, if municipal bonds were included within the terms, " all property," as used in those Articles of the Constitution, it was not merely within the power, but it was the absolute *duty* of the legislature to tax them. More than this, various revenue laws passed under those Constitutions contained general terms defining the objects of taxation, quite as capable of including such bonds as those of the existing Act. If these bonds had been included within such terms, it would have been the duty of the assessors to assess them and of the tax collectors to collect taxes on them.

Even since the adoption of the Constitution of 1879, under the Revenue Law of 1880, passed immediately after its adoption, which provided for the taxation of "all property situated in the State of Louisiana, except such as is expressly exempted from taxation by the Constitution," neither the legislative nor executive departments of the government considered that municipal bonds were subjects of taxation or made any attempt to assess them for that purpose.

Thus it appears, that from 1864 to 1883, under a state of Constitution and law substantially identical with that prevailing to-day, it has never been considered that municipal bonds were included within the subjects of taxation, or within the scope of the general constitutional and legal provisions which directed, that " all property," not expressly exempted, should be taxed.

We find nothing in the Revenue Law of 1882 indicating the legislative intent to tax such bonds, more strongly than was exhibited in the terms of prior legislative Acts. The reference to the enumeration among objects of taxation of " bonds liable to taxation," is of no avail; for it is evident that if municipal bonds are not included within the terms of prior revenue laws, taxing " all property, except such as is expressly exempted by the Constitution," they are not covered by the words, "bonds liable to taxation." Indeed, in view of the consistent treatment of such bonds as *not* " liable to taxation," the use of those words might well be construed as intended to exclude them.

If, therefore, the defendant assessors should be permitted, of their own free will, and for the first time in the history of the State, to list municipal bonds for taxation, it may be seriously questioned whether the tax imposed in pursuance thereof would not be essentially a tax

*levied by the assessors,* and not one levied by the legislative will or in pursuance of constitutional direction.

Is it reasonable or possible to suppose that the framers of the Constitution of 1879, in directing " all property " to be taxed, in terms exactly equivalent to those which had been used in two prior Constitutions, intended or expected that the language should have a broader meaning or receive a different interpretation from that which had been uniformly attached to like words in the latter ? We think not. We are bound to assume that they knew that the legislative and executive departments of the State, under those precedent Constitutions, acting under their solemn oaths to obey them had uniformly construed the mandate, that " all property shall be taxed," as not covering the public securities of the City and State, and had always exempted them from taxation. Nor can we avoid the conclusion that, had they intended their own like command to subject such securities to taxation, they would have expressed such intention in special and unequivocal terms.

It is obvious that no proposition could have been submitted to the convention which would have excited deeper agitation or would have been more novel, momentous and startling, than an open proposal to tax such securities. Yet we are asked to believe that, without in the slightest degree awakening public attention, and without a word of discussion, the convention has adopted such a measure under the equivocal guise of general provisions touching taxation, repeated substantially in the language of prior Constitutions under which they had never borne any such import.

The demand is equally repugnant to common sense and to sound principles of interpretation.

No maxim of statutory construction is better settled than this: " Where terms, or modes of expression, are employed in a new statute, which had acquired a definite meaning and application in a previous statute on the same subject, or one analogous to it, they are generally supposed to be used in the same sense; and in settling the construction of such new Statute, regard should be had to the known and established interpretation of the former." Maxims and Rules of Construction, in Blackwell on Tax Titles, p. 702; 20 Vermont, 49; 3 Zabriskie, 143.

It was a rule of the Roman law, *si de interpretatione legisquæratur, imprimis inspiciendum est quo jure civitas retro in ejus-modi casibus usa fuisset ; optima enim est legum interpres consuetudo.* Dig. 13, 37. *Legis interpretatio legis vim habet.*

It has been frequently affirmed by this Court, that " the common interpretation of statutes which has existed for a length of time will be considered, as it generally is, the correct interpretation," and that

the usage under a statute is its best interpreter. Beck vs. Brady, 7 An. 1; Hubgh vs. N. O. & C. R. R., 6 An. 496; Waldo vs. Bell, 13 An. 329.

A remarkable instance of the application of the foregoing rules is found in the construction of the extremely general provision of Art. 2294 of the Code of 1825, declaring, that "*every act whatever* of man *that causes damage to another, obliges him by whose fault it occurred to repair it;*" but this Court applied to these exhaustive words the limitations which had been imposed on them in prior systems of law from which they were taken, saying: "The dispositions of Art. 2294 are found in the Roman and Spanish laws; so far from being new legislation, that Article embodies a general principle as old as the science of jurisprudence itself, and it must still be understood with the limitations affixed to it by the jurisprudence of Rome and Spain." Hubgh vs. N. O. & C. R. R., 6 An. 496.

Applying these principles to the construction of the Articles of our Constitution under consideration, the conclusion is inevitable that the general terms thereof employed with reference to the known and established interpretation of like terms, as employed in prior Constitutions, as evidenced by the consistent usage of the State in the application thereof, and according to the universal understanding of all concerned therein—which interpretation, usage and common understanding, all concurred in excluding municipal bonds and other public securities of the State from their operation.

Nor can it be successfully opposed to this view that the words, " all property shall be taxed," are too clear and unambiguous to leave room for construction. On the contrary, such general terms and expressions are constantly subjected to construction, and it may be said that they are never allowed their full literal import.

To do so would be to extend their intent to subjects which the State has clearly no power to tax, such as bonds of the United States, and other means and instruments for the exercise of the powers delegated to the federal government; and to other subjects, such as the salaries of judges, public property, (though this is expressly exempted) and the like, which, though it is within the power of the State to tax, are yet considered on fundamental principles to be non-taxable. It is, therefore, laid down as a general principle by Judge Cooley, that " some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the *intent* of the legislature in adopting them. * * * * It is always to be assumed, that the general language of statutes is made use of with reference to taxable subjects." He concludes, that

"the property of municipalities is not, in any proper sense, taxable. It is, therefore, by clear implication, excluded. It is not like government agencies, excluded from the *power* of tax laws, but it is *beyond the grasp of their intent.*" Cooley on Taxation, pp. 130, 131; 30 N. J. Eq. Rep. 667.

Again, says Cooley, "it is a general rule, that where the public are to be charged with a burden, the *intention* of the legislature to impose that burden must be explicitly shown." Cooley on Tax. p. 201.

We quote these passages for the purpose of showing that, however broad and general be the expressions of tax laws, they are to be construed so as to give effect to the *intent* of the legislator.

We consider that the reasons heretofore given establish that municipal bonds have never been considered as properly *taxable* in this State; that they have always been considered as "presumptively exempted from the operation of general tax laws," and that, even if not excluded from the *power* of the taxing provisions of the Constitution, they are "beyond the grasp of their intent."

The Supreme Court of Pennsylvania had occasion to construe the words "all property" as used in a tax law. The case was this: "An Act of 1844 declared that debts due from solvent debtors shall be taxable for State and county purposes; an Act of 1850 declared that such debts shall not be taxed for borough or township purposes; an Act of 1851 declared that *all property* subjected to taxation for county purposes shall be for borough purposes." The Court admitted that the words "all property" might include "debts due from solvent debtors;" but, in view of the general exemption in the former Act of such *debts* from borough taxation, it held, that it would not hold the words "all property" in the later Act as evidencing the legislative *intent* to include them, in absence of express designation. Gaepp vs. Bethlehem, 4 Casey (Penn.) 254.

And in a later case, the same Court, referring to the above decision, said: "We need not repeat the argument in support of the construction given to the words *all property* as found in the Act. It is sufficient to say that it must have expressed the legislative *intent* and the will of the people, or the Act, as thus interpreted, would not have remained unchanged for so long a period. The construction given to it has become fixed and settled, and it is now too late to attempt to change it." Mifflintown vs. Jacobs, 69 Penn. 151.

The Supreme Court of Georgia held, that the power granted to a municipal corporation to tax *property* generally, could not be considered as including authority to tax State bonds, in absence of "express

words so declaring," even if such taxation were within the legislative power.   City of Augusta vs. Dunbar, 50 Ga. 387.

The first Article of our Civil Code declares, that "law is the solemn expression of the legislative *will*." This Article, though often and justly citicised as a definition of law, nevertheless consecrates the principle that the vital element of statutory or constitutional law is the "legislative will." The ascertainment of this *will* or *intention* is the sole purpose of judicial interpretation or construction.

Rules and maxims of interpretation have no other purpose except as aids to the accomplishment of this prime object.  Many of these rules are apparently contradictory of, and inconsistent with each other.  We have quoted some which favor and support the construction which we have placed upon the provisions of law under consideration.  It would not be difficult to quote others which oppose it.  But, after all, the judicial mind reverts to the fundamental question, what is " the legislative will ? "   When it has reached a firm, secure, confident conviction on that point, such it must announce to be the law.

Thus, although the Revised Code of Practice explicitly provided, that the party applying for an attachment must give bond in a sum " exceeding one-half that which he claims," this Court, convinced by the circumstances, history and prior interpretation of the legislation on that subject, that such was the undoubted " legislative will " held, that the Article meant " exceeding *by* one-half." Yale vs. Cole, 31 An. 687.

The same doctrine was carried by this Court to the very verge of discretion in holding that Article 128 of the Constitution, which conferred upon the Courts of Appeal for the Parish of Orleans jurisdiction where " the amount in dispute exceeds two hundred dollars, and is *less than one thousand dollars*," gave jurisdiction of an amount in dispute of exactly one thousand dollars, being satisfied that such was " the legislative will." La. Ice Co. vs. State National Bank, 32 An. 597.

We cite these cases as extreme examples of the length to which courts will go in giving effect " to the legislative will," when fully satisfied thereof.

Such examples are, and should be rare.  We do not conceive that, in our instant decision, we are adding to their number.  On the contrary, our construction of the laws under consideration is natural and supported by sound principles and frequent precedents.  At all events, we do not hesitate to declare that our conviction that State and municipal bonds were not within the grasp of the legislative intent, in the general provisions of the laws relative to the taxation of property, is quite as fixed and certain as if they had been expressly excepted.

Although it is not necessary for us so to hold, yet, when analyzed, it

is doubtful whether the values here sought to be taxed do not fall within the express exemption accorded to public property. A bond of the City of New Orleans is negotiable and imports consideration. It represents no intrinsic value except the consideration which passed to the City upon her promise to return a stipulated equivalent. When the value of that consideration passed from private ownership into that of the City, it ceased to be private and became public property, and, therefore, non-taxable. When the City shall return this value or its stipulated equivalent to private ownership, by payment of her bond, it will become again private and taxable property; but for the City to retain the value and, at the same time, to tax it through the holder of her bond, is certainly shocking to justice and common sense.

The same remark is equally applicable to the State, whose creature and agent the City is, and under whose authority and direction the bond was created and issued.

These views seem to harmonize substantially with those expressed by the Supreme Court of the United States in Murray vs. Charleston, 96 U. S.

Taxation, thus doubtful in power, indefensible in morals, wanting in explicit legislative sanction, irrational in policy, and barren of results, because incapable of practical enforcement, needs a stronger title to judicial recognition than mere quibbling on the literal meaning of words which, by long use and interpretation, have acquired in their present connection a restricted import exclusive of that now sought to be attached to them by mere executive officers of the State.

It is a satisfaction to us thus to be able to acquit the convention and the legislature of the design to make this most insidious and dangerous of all forms of assault upon public credit. Good faith and justice, as they are the ornaments of States, are also indispensable conditions of their prosperity and advancement. To use the famous metaphor of Junius, "public honor is security; the feather that adorns the royal bird supports his flight; strip him of his plumage and you fix him to the earth."

II.

The conclusion above announced relieves us from the duty of determining whether taxation of State or municipal bonds by the State, or by any municipal corporation thereof, would have effect to impair the obligations of the contracts, in violation of the Constitution of the United States.

In homely phrase, that is a bridge which we will cross when we come to it.

It is, therefore, ordered, adjudged and decreed that the judgment

State ex rel. DaPonte vs. Board of Assessors et al.

appealed from be annulled avoided and reversed, and it is ordered and decreed that alternative writs of mandamus originally issued herein be made peremptory at cost of defendants in both Courts.

### DISSENTING OPINION.

BERMUDEZ, C. J.    The real question at issue is simply : whether the property owned by the relator and represented by *bonds*, which are promises to pay, is exempt from taxation.

The bonds possess themselves no intrinsic value. They are nothing but paper evidencing an indebtedness on the part of the State and City, a claim of the holder, for the payment of money which is property. If the bonds were destroyed by accident, the right of the owner to recover the money would not perish with them.

The principle is too familiar to necessitate a reference to authorities, that the State and her functionaries vested with delegated authority have the right and power to tax within constitutional limits, where any exist, *all property* which is not exempt expressly or impliedly, and that when an exemption from taxation is claimed, the burden of establishing clearly the exoneration rests upon the party averring. See, however, Burroughs on Tax. p. 3 ; Cooley on Tax. pp. 65, 130, 152 ; Dillon on Mun. Cor. p. 151 ; 4 Wh. 429, (435).

Exemptions result from provisions to be found in the organic law or in some statute passed with authority conceding the privilege. Exemptions are formal or virtual, express or implied.

There is no pretense here that the property of the relator represented by bonds, within the limits of the City and State, are, in as many words, exempt from taxation, for that pretension could not be established. Whatever constitutional provisions and statutory enactments exist, they are, on the contrary, obnoxious to the pretension, and they challenge the whole power of the relator to show their inapplicability to his case.

The relator relies upon an implied exemption.

No one denies that there are " *things*," (that is, *property*) which are always presumptively exempted from the operation of general laws, because it is assumed that they were not within the grasp of the legislature in adopting them, not, however, because the lawgiver could not tax them.

Those things are nothing but the property belonging to the State or the City, or to some other functionary, and which constitute the means necessary and used for governmental purposes. They do not consist of property belonging to individuals, within the territorial jurisdiction of the taxing power.

It would be frivolous for a State, for a parish, for a city, to tax its own property, but it has occurred and for reason, too, that a State has taxed the property of its functionaries. The authorities invoked cover none but *public property,* which has always been exempt in this State, but they cannot be stretched one inch further.

The intangible property which individuals own, is represented in a multitude of ways which have no intrinsic value. It is not the form or shadow, but the substance, the reality, which forms the object of taxation.

It is claimed that the exemption is to be implied from the fact, that property represented by bonds has never been taxed, and that hence, it is to be irresistibly inferred that the State has willed it to be exempt, that this abstention is a construction or interpretation which amounts to a formal or express recognition or declaration of exemption. This is a fallacy.

There exist two insuperable objections to the triumph of the proposition, which is incorrect in law and in fact.

The taxing power is vital to the functions of government. It helps to sustain the social compact, and to give it efficacy.

It is intended to promote the general welfare. It reaches the interest of every member of the community. It may be restrained in special cases for public good, when there exists no prohibition ; but the exemption must be established, as there is no presumption in its favor. Every reasonable doubt is fatal and must be resolved against it. When the exemption is shown it must be rigidly scrutinized, and is never permitted to extend, in scope or duration, beyond what the terms of the concession clearly require. It is in derogation of common and public right, and narrows a trust created for the good of all. (In this sense, on the question of exemption under contract, see 22 Wall. 575 ; 93 U. S. 597.)

Hence, it is, that property represented by State and municipal bonds is considered as proper subjects of taxation, whenever they are found in the same manner, unless it is clearly proved that it does not come within the rule.

The present Court has decided after mature deliberation, on a second consideration of the exemption invoked on an identical ground, that the omission of the officers to perform that which it was their duty to do, however long the suspension, could not be considered as justified by law or by the State, where no law or authority is produced in support of the dereliction. * * * If the inaction of such officers could produce the effect claimed, the legal effect would be the lodging into their hands of the very power of exemption which the State alone can

wield, and to confer on them effectual authority to amplify restricted immunities conceded by the law giver. 34 An. 958.

It is error also to assume as a fact that bonds *eo nomine* have never heretofore been expressly announced by law to be liable to taxation. The delaration was not required, as all non-exempt property was taxable.

The Constitutions in force at the various dates at which bonds have been issued by the State or by the City, emphatically required that all property should be taxed. That meant that everything which forms part of the wealth of an individual, and which is found within the territorial jurisdiction of the taxing power, shall be taxed unless it be exempt from taxation.

There cannot be found a revenue act since bonds were issued, which declares that personal property, such as capital, money loaned, credits, etc., shall not be taxed. They are all to the reverse. Our immediate predecessors have held, that bonds are property and are taxable. Even that where capital was invested in part in bonds exempt from taxation, the money invested could be taxed. 30 An. 876.

The previous Charters of the City, after providing that all real and personal property in the City of New Orleans, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions specified, declare that the term "personal property" shall be construed to include : capital, debts due, whether on account, contract, note, *bond*, mortgage, certificate, or any other obligation, * * * any property which is not real." See Charter 1870, p. 37, Secs. 13 and 14 ; Amended Charter 1856, p. 146, Secs. 36 and 38.

The argument to establish exemption has therefore no force, that the bonds of relator do not fall within the intent and meaning of *property*, as employed in Articles 203 and 207 of the Constitution, or of the same word, or of the words : "bonds liable to taxation," in the Revenue Act and in the City Charter. It is manifest, from the very words in the Constitutions and laws in force at the issuance of the bonds and since reiterated more plainly, that it did enter in the legislative intent and grasp to tax bonds. Conventions and legislatures and this Court have considered bonds as property, and included them in that generic term which, unrestricted and amplified as it is, embraces both State and municipal bonds.

The words "liable to taxation" are inocuous and practically cumbersome. They neither add to, nor detract from, the character of the bonds in contemplation.

The legislature could order, neither directly nor indirectly, the taxation of bonds which were previously exempt. The words were evi-

dently inserted by inadvertence and are surplusage. They surely afford no just opportunity for a deduction of the exemption claimed.

If it be true that the words are not redundant, but are significant, then the unavoidable inference is that there are bonds which are taxable. As the relator has pointed to no law exempting his bonds, the conclusion would be that they are included among those described as liable to taxation.

If, as claimed, the legislature designed to exempt bonds of the character of those held by the relator, by using the words "liable to taxation," the double inquiry at once arises: where does the legislature derive its exempting power and what bonds did the legislature intend to tax? The Constitution enumerates what property shall be exempt and distinctly announces that no other shall enjoy the immunity. The legislature is powerless to add too, or take an iota or dot from the organic law. To those inquiries, the only answer would be, that the law giver intended to tax *judicial* and *official* bonds. But is that in common sense a possibility? Assuredly not.

It is worthy of note, that in 1856 and particularly in 1870, the City of New Orleans had an immense amount of bonds outstanding, and that in the City Charter of 1870, in the enumeration of property exempt from taxation, conspicuously figure some of those bonds. P. 38, Secs. 15 and 17. The only bonds which ever were exempt from taxation are the City Railroad and Consolidated Bonds, under Acts of 1856, p. 164, and of 1860, No. 3.

Had not the legislature considered that those bonds, or the property of which they represent the capital, the money invested in them, were as a rule taxable, it must assuredly not have passed those exempting laws. It cannot be pretended that, in so doing, the legislature did a vain thing. The question now at issue is not one altogether novel. It was twice presented to the consideration of courts of last resort in sister States and to the attention of the highest tribunal of the country and the power and right of the State and of her functionaries was formally recognized. Champaign vs. Smith, 7 Ohio St. 42; People vs. Home Ins. Co., 29 Cal. 533.

In a celebrated case which went to the United States Supreme Court, the question was put: " Is property, which consists in the promise of a State or of a municipality of a State, beyond the reach of taxation ? "

And the answer was:

" A State may undoubtedly tax any of its creditors within its jurisdiction for the debt due him and regulate the amount of the tax by the rate of interest the debt bears, if its promise be left unchanged.

A tax thus laid impairs no obligation assumed.    It leaves the contract untouched." Murray vs. Charleston, 96 U. S. 445.

In a more recent case, and no less important and interesting, the same Court said, in alluding to it:

* * * " It is urged that the bonds of every State are property in the hands of its creditors, and as such that they should bear a due proportion of the public burdens.  In the case of Murray vs. Charleston, (96 U. S. 432) there are many pertinent and just observations on this subject, which it is not material to repeat." * * Hartman vs. Green-horn, 102 U. S. 683.

It cannot therefore be questioned that the State could herself, and through her functionary, tax property, the title to which is represented by bonds, and thus subject it to both State and municipal taxation.

No one here claims that, previous to payment, or at the time of payment, the State or municipal corporation could satisfy the tax levied out of the amount due and being paid the creditor; but there is no constitutional or other objection to realizing it from the same amount after it has been reduced to possession by the creditor, *if it can be reached.*

The Constitution in force, and the Revenue Act and City Charter declare what property shall be exempt, and expressly restrict the exemption to the described property and extends it to "*no other.*"   In this they only repeat the provisions of previous Constitutions and laws on the subject.

The property of the relator, consisting in money loaned and invested in bonds within the territorial jurisdiction of the taxing power, is property which was taxable *ab initio,* when the State and City issued their bonds for value, or in exchange, and has continued so to be.

In claiming an exemption the relator has placed himself within the exception of the rule, and assumed to prove his title to immunity.

He has shown no constitutional provision, no legislative enactment, no judicial adjudication, to support his position.   All the authorities, Constitutions, laws and precedents are antagonistical to his pretension and unequivocally subject his property in that form to both State and municipal taxation.

With all due deference to the opinion of the majority of the Court, and uncontrolled by considerations of expediency and of consequences, I feel it my bounden duty to withhold my concurrence, as I consider it to be bold judicial legislation exempting, in the teeth of the Constitution, upwards of ten millions of property, the exemption to last for forty odd years to come.

Against such exemption I, therefore, enter my conscientious and solemn protest.

State ex rel. DaPonte vs. Board of Assessors et al.

### DISSENTING OPINION.

TODD, J. The power of taxation is one of the most important attributes of sovereignty. It is a cardinal principle relating to such power, that it inherently comprises all subjects over which the sovereignty extends. As said by an eminent law writer: "The power of the State as to the mode, form or extent of taxation is unlimited when the subjects to which it applies are within her jurisdiction." Burroughs on Taxation, 3.

We find a recognition of this principle by the Supreme Court of the United States in the following language of that pre-eminent jurist, Chief Justice Marshall, in the case of McCullough vs. Maryland, 4 Wheaton, 434:

"If we measure the power of taxation residing in a State by the extent of sovereignty which the people of a single State possess and can confer on its government, we have an intelligible standard applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a State unimpaired—which leaves to the State the command of all its resources."

This language, so terse and at the same time comprehensive, conveys graphically to the legal mind the nature and unlimited extent of this vast power.

Though, thus, an incident of sovereignty and co-extensive with it, its scope and operation may be restricted and confined within designated barriers by constitutional or statutory limitations.

The authoritative declarations of our present State Constitution, on the subject of the taxing power, are as follows:

Article 203 provides, "that taxation shall be equal and uniform, * * and all property shall be taxed in proportion to its value."

Article 207 of the same Constitution declares the exemptions from this mandatory and sweeping provision in these words: "The following property shall be exempt from taxation, and no other, viz: All public property, places of religious worship or burial, all charitable institutions, all buildings and property used exclusively for college or other school purposes, the real and personal estate of any public library and that of any other literary association used by or connected with such library, all books and philosophical apparatus, and all paintings and statuary of any company or association kept in a public hall; provided, the property so exempted be not used or leased for purposes of private or corporate profit or income."

84

Thus, we see that the constitutional command is substantially, in its terms, that no other property than that thus specifically named shall be exempt; all other must be taxed.

Act 96 of the General Assembly of 1882 is strictly in conformity to that requirement.

In the light of these constitutional and statutory requirements, and the principles adverted to, underlying this entire subject of taxation, the question arises, whether the City bonds before us are proper subjects of taxation, and were legally and properly assessed in this instance.

We have seen that there is no declared exemption for them. Then the question arises, are they property in the sense of the Constitution? In my opinion they must be. Abbott defines property as " anything which a person owns, the various subjects in which an individual may, by law, have exclusive dominion and enjoyment," and cites, as supporting this definition, the following expressions from adjudicated cases:

" Property, used alone, includes lands, tenements, hereditaments and commodities, whatever can be appraised or estimated in money." People vs. Mayer, 7 Barb. 535.

" Property, in a bequest, includes everything which may be the subject of ownership, as money and securities." Ball vs. Ball, Spear's Ch. 48.

"It includes stock in corporations owned by the testator." Adams vs. Jones, 6 Jones Eq. 221.

And this Court, in the case of City vs. Insurance Company, 30 An. 876, declares:

" The argument by which it is attempted to be shown that notes, bills, bonds, stocks, etc., are not *property*, is too sublimated and metaphysical to be practical in matters of legislation."

It is conceded, however, in the majority opinion, and is not denied by the counsel for the relator, that the bonds in question are property.

Being property, and not being expressly exempted, it would seem difficult to escape the conclusion, in view of the imperative language of the Constitution, that they should be taxed.

Cooley lays down the rule on this point thus:

" The intention to exempt must, in any case, be expressed in clear and unambiguous terms. Taxation is the rule; exemption the exception." Cooley, Law of Taxation, p. 146.

In the face of the plain and unambiguous provisions of the Constitution and statute, and in the absence of any clause in the law or or-

dinances, under which these bonds were issued, exempting them from taxation, I find no room for implication in the matter, for it is by implication, and implication alone, that the conclusion is reached that these bonds are not taxable. It is implied that they are not within the "grasp of the legislative intent." While I admit the force of the reasoning by which this proposition is supported, it seems to me that the rules of construction invoked, by which the conclusion is reached, are misapplied. All such aids to construction, to ascertain the legislative intent, can, in my opinion, only be legitimately applied where the language of the Constitution or statute to be construed is obscure or doubtful. Where there is no such obscurity or doubt, as I think is the case in this instance, then the only rule for our guidance is that plain and easy one laid down in our Code, which declares:

" When a law is clear and free from ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." C. C. Art. 13.

And as more directly in point on the subject before us, we find the rule laid down by Dillon thus:

" As the burden of taxation ought to fall equally on all, statutes *exempting persons or property are construed with strictness,* (the italics are the author's) and the exemption should be denied, unless so *clearly* granted as to be free from fair doubt."

Apart from the plain inference to be derived from the language of the Constitution and statute referred to, we have high authority in support of the proposition that municipal bonds are proper subjects for taxation.

Burroughs, an eminent writer on the subject, declares:

" The State bonds and bonds of municipal bodies, and circulating notes of banks, which are treated as property where they are, and pass by delivery, are the subject of taxation wherever found, in the same manner as chattels. Such statutes will be construed most strongly against those claiming the exemption." Burroughs on Taxation, p. 51; and refers to 4th Peters, 514; 11 Peters, 420; 10 How. 393; 1 Black, 436; see, also, Dillon, Mun. Cor., 151; 4 Keyes, 303; 29 Cal. 533; Murray vs. Charleston, 6 Otto, 445.

For these reasons, I can come to no other conclusion, than that the bonds in question are taxable and were properly assessed for taxation, and, therefore, dissent from the opinion of the majority.