THE STATE *ex rel.* DUNNICA, *Appellant*, v. THE COUNTY COURT
OF HOWARD COUNTY.

**Taxability of Municipal Bonds kept out of the State.** When
municipal bonds belonging to a person who has his domicile in this
State, are sent into another State, not for the purpose of avoiding
taxation, but for safe-keeping, they cease to be taxable here. This
is the general doctrine, and the principle is embodied in the Reve-
nue Act of 1872. Wag. Stat., § 31, 1164.

*Appeal from Howard Circuit Court.*—HON. G. H. BURCKHARTT,
Judge.

*Wash Adams for Appellant.*

For many purposes, personal property, by a fiction of
law, is said to follow the person. But in regard to all pro-
ceedings *in rem*, such as administration and property taxa-
tion, which is essentially a proceeding *in rem*, this fiction
must give way to the truth, and the real *situs* of personal
chattels or *choses* in possession is where they are actually
located, and can be seen and handled notwithstanding their
owner is a non-resident. It is well settled, that where the
owner resides in one State, and his personal chattels have
actual *situs* in another State, he cannot be taxed for such
property at his residence. Burroughs on Taxation, 40.
Negotiable municipal bonds are in the nature of personal
chattels in possession. They pass from hand to hand by
delivery, and if stolen a good title can be passed by the
thief to a *bona fide* purchaser. Wherever their real *situs*
is, that is the State where alone they are liable to taxation

and administration.   Burroughs on Taxation, 52, 53; State Tax on Foreign-held Bonds, 15 Wall. (U. S.) 323; *Trowbridge v. Commissioner*, 4 Hun (N. Y.) 595; *Attorney General v. Bouwens*, 4 M. & W. 171; *Varner v. Calhoun*, 48 Ala. 178; *Attorney General v. Hope*, 1 C. M. & R. 530; 8 Bligh 44; *British Com. Life Ins. Co. v. Commissioners*, 40 N. Y. (1 Keyes) 303; *People v. Home Ins. Co.*, 29 Cal. 533; *Attorney General v. Dimond*, 1 Cr. & Jer. 370.

*Major & Shafroth* with *R. B. Caples* for respondents.

The *situs* of personal property, such as the bonds in question, follows the domicile of the owner, and is taxable there.   Cooley on Taxation, 269, 270; *Hannibal & St. Jo. R. R. Co. v. State Board*, 64 Mo. 294; *Parker Mills v. Com. of Taxes*, 23 N. Y. 242; *People ex rel. P. M. S. Co. v. Com. of Taxes*, 64 N. Y. 541; *Railroad Co. v. Pennsylvania*, 15 Wall. 282; *Railroad Co. v. Jackson*, 7 Wall. 262.   The exceptions to this proposition are in instances where the personal property is invested in loans, or some business enterprise in a State different from the residence of the owner.   In such cases the property is taxed at the place of investment, without reference to the residence of the owner or holder of the property.   *People v. Home Ins. Co.*, 29 Cal. 533; *Catlin v. Hull*, 21 Vt. 152; *Hoyt v. Commissioners*, 23 N. Y. 224; *People v. Gardner*, 51 Barb. 352; *St. Louis v. Wiggins Ferry Co.*, 40 Mo. 580; *Pacific R. R. Co. v. Cass County*, 53 Mo. 17; *State ex rel. Taylor v. St. Louis Co. Ct.*, 47 Mo. 594; *Curtis v. Ward*, 58 Mo. 295.   The relator's bonds should be taxed somewhere.   Under the ruling in *People ex rel. Bank v. Commr. of Taxes*, 59 N. Y. 40, they are clearly not taxable in that State.

NAPTON, J.—Upon a *certiorari* issued at the instance of W. F. Dunnica, requiring certain proceedings by the board of equalization and the county court to be sent up to the circuit court for review, it appeared that the assessor of Howard county notified the board of equalization

that Dunnica had falsely and fraudulently refused to give a correct list of his personal property. In the investigation of this charge the board found that Dunnica had twenty-two bonds of Howard county, $1,000 each, and prior to such assessment had sent them to New York; that they were taxable in Howard, and, therefore, raised his assessment by $17,600, and by way of penalty for furnishing such false list, trebled this sum, and ordered him to be taxed on $52,800. The county court sanctioned this act of the board.

In the circuit court, on the return of the *certiorari*, it appeared that Dunnica testified before the board that prior to the passage of the Revenue Act of 1872, he sent twenty-two Howard county bonds, belonging to his wife, of the value of $17,600, to the City of New York, in the State of New York, to the Safe Deposit Company of New York, being the bonds aforesaid, which company kept a safe for the purpose of safely keeping bonds of this character, payable to bearer; that he paid one dollar per thousand for the safe keeping of said bonds; that the said bonds were in New York on the 1st day of August, 1875; that they were not sent out of the State of Missouri to avoid taxation, but for safety; that he had made no effort to conceal the fact that his wife held the bonds; that he had consulted counsel and was advised by such counsel that said bonds were not taxable or subject to taxation in the State of Missouri; that he did not believe the bonds were taxable, by law, in this State, and that he had taken the oath required by law; that he had sent no property or bonds out of this State to avoid taxation. The board of equalization, without hearing other evidence, proceeded to add to the assessment list of relator the bonds found by them and shown by relator to have been in the State of New York on the 1st day of August, 1875, placing said valuation at the sum of $17,600. The circuit court quashed the *certiorari*, thereby sustaining the action of the county court and the board of equalization.

It will thus be seen that the only question involved is, whether these municipal bonds were taxable in Howard county, the domicile of the owner, though sent to New York for *bona fide* purposes three years before the assessment. Mr. Justice Field observes in 15 Wall. 323, that "it is undoubtedly true that the actual *situs* of personal property, which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of State bonds and bonds of municipal bodies and circulating notes of banking institutions; the former, by general usage, have acquired the character of and are treated as property in the place they are found, though removed from the domicile of the owner, the latter are treated and pass as money wherever they are." In this State the opinions have been decidedly in conformity to this position, and, indeed, have gone beyond it, extending the doctrine to ordinary bonds and stocks. In *State on petition of Taylor v. St. Louis Co. Ct.*, 47 Mo. 594, the doctrine is applied to bonds, notes and stocks of every description. In *St. Louis v. Wiggins Ferry Co.*, 40 Mo. 580, the same doctrine is sustained. "The property of either a resident or non-resident is taxable here, if it be found situate within the local jurisdiction, whether it be within the hands of the owner himself or of his agents." It is conceded that they cannot be assessed in both States, the *situs* of the bonds and the domicile of their owner, though an erroneous assessment in one will not exempt them from a correct assessment in the other. Our statute of 1872, adopted since the decision above referred to, seems to us to concede its propriety. The 31st section (2 Wag. Stat., 1164), requires the following oath to be taken by the citizen assessed: "I do solemnly swear, [or affirm,] that the foregoing list contains a true and correct list of all the personal property made taxable by the laws of the State of Missouri, including therein money and notes, or bonds in hand or on deposit, owned by me under my charge or

management, &c., and that I have not sent or taken any property, bills, bonds or notes, or other securities out of this State to avoid taxation, so help me God." Does not this oath necessarily imply that where such property has been sent out of this State for *bona fide* purposes, and not to avoid taxation, it is exempt? Why require the oath, if it is equally subject to taxation, whether sent out of the State in good faith or not? Our Legislature seems to have been of opinion that the adoption of the rule declared in *Taylor v. St. Louis*, 47 Mo. 599, would not operate injuriously on the revenue, believing, doubtless, that the property of capitalists in this State whose domicile was abroad, would greatly exceed that of our own citizens the *situs* of which was in good faith in other States. Nor were they impressed with the justice of declaring property taxable here which was properly taxable elsewhere. That such is the English rule is apparent from the leading cases of *Attorney General v. Hope*, 1 C. M. & R. 530, and *Attorney General v. Dimond*, 1 Cr. & Jer. 370. In conformity, then, to the decisions in this State, and, indeed, to the fair deductions from the revenue law itself, it is obvious that the judgment of the circuit court was erroneous. It is, therefore, reversed. The other judges concur.

REVERSED.