McCrary, C. J.,
(orally.) This case is submitted upon exceptions to the report of the master. It is a bill filed to foreclose a mortgage upon 640 acres of land in this state, executed to secure 100 bonds issued by the defendant corporation. Several parties appear in this case, claiming to be owners of some of these bonds. The master has reported his conclusions with regard to the title of each of the claimants. The only questions presented relate to the title of the plaintiff Chew and the defendant Burch. Chew claims to be the owner of several of these bonds, and the master finds that he has no title. There is an exception to his finding. Burch claims to own a lai'ge number of them, and the master finds in his favor. There is an exception also to this finding. The bonds are negotiable, and, according to the repeated decisions of the supreme court of the United States, they have all the qualities of negotiable commercial paper. They were placed in the hands, a portion of them at least, of one Muir, with authority to negotiate them for the benefit of the corporation. I think the language of the resolution of the corporation was “for the purpose of raising money to develop the mines.”
Muir held these bonds in New York as the agent of the corporation, with this authority, and no other. He placed some of them in the hands of a man by the name of Dever, who transferred them to plaintiff Chew, in order to raise money; not, however, for the corporation, but for Muir’s private purposes. Of course the question here is, and the only question is, as to notice. Where a corporation places its bonds in the hands of an agent, with power to negotiate them, and puts them in that way upon the market before maturity, the purchaser has a right to presume that thv agent is acting within the scope of his authority, and is not bound to inquire into the application he is to make of the proceeds of the sale. But if the purchaser is informed upon this subject, and has notice, then, )f course, he takes them at his peril. The proof upon this *7 point, so far as Chew is concerned, is found in his testimony, quoted by the master, as follows:
“Interrogatory 4. Did said Devcr stats for whose account he applied for loans on said bonds ? Answer. Yes. He said the bonds were owned by William Muir, or held by William Muir; that said Muir was the agent of the Henrietta Mining & Smelting Company, at New York; that $100,000 of said bonds had been prepared for issuance by said company, the proceeds of sale of which were applied to the purchase of machinery to work the mine, which he said was located near Potosi, in the state of Missouri; he said further that Willis Muir was pressed for funds, and had requested him to make loans for him (Muir) on the said bonds.”
I agree with the conclusion of the master that upon that statement Mr. Chew was fully informed, not only as to the nature and extent of Muir’s authority, but of the fact that he was violating it in so placing the bonds for the purpose of raising money for his own purposes, and not for the corporation; and, on that ground, the exception to the report, so far as that part of it is concerned, is overruled.
As to the other part of the case, — the title of the defendant Burch to the bonds' represented by him, — I have had more difficulty. But in this case, as in the other, it is simply a question of notice; and I believe the rulings of the supreme court go so far as to hold that there must be something amounting to bad faith on the part of the purchaser before his title to negotiable paper of this kind, purchased in the open market, can be defeated. An important fact in the case, as bearing upon the question of good faith, is this: Mrs. Burch advanced money — the title of the present defendant being derived from Mrs. Burch, of course the question is as to hertitle — to the secretary of the company, and to her husband, for the purpose of paying a debt for which the corporation was liable in equity. The debt was created for the purchase of this very real estate which is now in controversy. It was taken in the name of Edgerton, the secretary of the company, and Burch, as a mere matter of convenience, I apprehend, and they advanced on the payment of the pur *8 chase money something oyer $2,000, and then conveyed it to the corporation.
Nov?, it was to pay this money, by them advanced, that Mrs. Burch made the loan now in controversy. I say this has an important bearing upon the question of good faith, because it might well have been believed by Mrs. Burch that the secretary of the company had authority to use the bonds of the company for the purpose of raising money to pay this debt, which was a debt, in equity at least, against the corporation. Then, again, she received the bonds from the secretary of the corporation, and, I believe, it has been repeatedly held by the supreme court of the United States, and perhaps by other courts, that a purchaser of the bonds of a corporation may presume that an officer of the corporation, acting in the capacity of an agent of the corporation, is acting within his authority, unless actual or constructive notice is brought home to such purchaser. But it is said that the husband of this lady knew the facts, and that notice to the husband is notice to the wife. I think, however, that this is not true for all purposes. When a married woman is acting or contracting with reference to her separate estate, it is well settled that she is to be regarded as a feme sole.
In regard to such transactions, especially under the more modem and enlightened view of the subject, she is as independent of her husband as he is of her. She is bound, then, in such transactions, only by notice given to him in so far as he acts as her agent. The supreme court of Missouri has stated this doctrine in the sixty-seventh volume of the Missouri Reports, page 601, in the case of Morrison v. Thistle, as follows: “In equity, husband and wife are not, in a large number of cases, regarded as one and the same person. They, for this reason, may sue and be sued, contract and be contracted with, and become the creditor or debtor of each other with like effect, so far as regards equitable contemplation and rights, as if they had never become one flesh,” citing numerous cases.
Now, there is no proof that Mrs. Burch had any information with regard to the authority of the secretary of this com- *9 ¿any, except that she was assured that the transaction was all right and proper, and acted upon the faith of that assurance. Her husband was, in this case, in no sense her agent; on the contrary, he dealt not for her hut with her; was one of the parties asking the loan from her, and I think, therefore, that this is not a case in which the doctrine of notice to the husband is notice to the wife can have any force. It is also insisted that the trustee of Mrs. Burch, with respect to her separate estate, (De Cordova,) knew the facts, and that notice to him is notice to her; that is, that notice to the trustee ia notice to the cestui que trust. The answer to that is that De Cordova, although her trustee with regard to her separate estate, was not her trustee with reference to this transaction at all. Holding as he did the naked title to her lands, and for her use and benefit, he joined with her in making the mortgage for the money to be loaned to these parties; hut that was a separate transaction horn the matter now in controversy, to-wit, the hypothecation of these bonds, and with that the trustee had nothing to do.
The result of my examination of the case is that the exceptions to the report of the master must he overruled.