BREAUX, J.
Plaintiff here, relator in the lower court, objects to a claim presented to it for the payment of a tax on certificates it holds.
It urges that its certificates are not private property. It avers that they are public securities, not taxable without constitutional authority and an enabling statute; that no such authority can be shown; and that to tax such securities impairs the obligation of the contract upon which they are based.
These certificates were issued to the Louisiana Improvement Company by the city of New Orleans for work done by it under a contract with that city. Its contention is that, having been issued by the city, they are, substantially, in the present situation of affairs, the city’s promises to pay, not subject to taxation.
The record informs us that the relator had asphalted streets in this city. On the 1st of January, 1901, there was due to it $54,000 for the city’s proportionate share of pavement, and for which certificates of performance, bearing interest at the rate of 6 per cent, per annum, have been issued and placed in plaintiff’s possession.
The Board of Assessors for the state and city listed and assessed these certificates. The Louisiana Improvement Company, plaintiff and relator, made timely objection to the Board of Assessors and to the city council, and now sues to be released from the payment of the tax on the grounds before mentioned, and further urges that this claim for taxes constitutes a violation of the acts of the General Assembly incorporating the city of New Orleans, and the ordinances and contract of plaintiff with the city.
The relator attacks Act No. 170, p. 346, of 1898, as being contrary to, and in violation of, the Constitution of the state of Louisiana (article 155 of 1879, and article 166 of 1898), and section 10 of article 1 of the Constitution of the United States, and that it impairs, the obligation of the contract in question.
The Louisiana Improvement Company says, in substance, that a political subdivision of the state, in incurring obligations for-public improvements, has no right, nor has the state, to burden these obligations with taxes; that at no time previous has any attempt been made to tax these certificates;, and the Louisiana Improvement Company invokes that fact as a contemporaneous construction adverse to a claim for taxes on certificates.
The terms of the tax statutes at this time, as relates to public property, are not more far-reaching in their scope than prior statutes on the same subject. The court, in inter- *985 preting prior similar statutes, held that such bonds are not liable to taxation.
The court expressly stated that municipal bonds were not included within the terms “all property,” as used in the articles of the Constitution, and as, in substance, expressed in the statutes.
The authorities have always “construed the mandate that all property shall be taxed as not covering public securities of the city and state, and had always exempted them from taxation.”
The court further said, among other things: “It is a satisfaction to us to be able to acquit the convention and the Legislature of the design to make this most insidious and dangerous of all forms of assault upon the public credit. Good faith and justice, as they are the ornaments of the state, are also indispensable conditions of its prosperity and advancement. To use the famous metaphor of Junius: ‘Public honor is security. The feather that adorns the royal bird supports his flight. Strip him of his plumage, and you fix him to the earth.’ ” Da Ponte v. Board of Assessors, 35 La. Ann. 651.
In another state jurisdiction, a court of last resort said: “It is not to be presumed that the state intended, without any express grant to that effect, to confer upon a municipal corporation a power thus to depreciate state securities, and do what the state itself ought not to be presumed to have done in the absence of clear language so directing.” City of Augusta v. Dunbar, 50 Ga. 393.
The text of learned commentators furnishes no criticism against the discussions of courts on this point. It is not “competent for a city which has issued obligations wherebj' it has promised to pay definite sums to diminish these payments under the guise of taxing them.” Cooley on Taxation (Ed. 1876) p. 79.
The Supreme Court of the United States is emphatic regarding the necessity on the part of the state of strictly and literally complying with its obligations as a debtor.
“Debts are not property, and the expressed stipulations of a contract cannot be affected by the exertion of the taxing power. AVhat has been promised to the creditor should be paid without deducting a tax imposed by the debtor.” Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760.
Again the Supreme' Court of the United States said: “As to the public securities, it is settled that any tax levied upon them cannot be withheld from the interest payable thereon.” Such was the decision of this court in Murray v. Charleston, cited supra, thus affirming this last-mentioned case. Hartman v. Greenhow, 102 U. S. 683, 26 L. Ed. 271.
It cannot be successfully contended that such bonds as those to which we have heretofore referred are liable to taxation, however much they may be liable to a tax when they enter into the working capital of a corporation.
They were indirectly taxed, in so far as they went to make up capital in the case reported in First National Bank of Shreveport v. The Board of Reviewers of Assessment, 41 La. Ann. 181, 5 South. 408. That is not the case here. The bonds do not form part of, or go to make up, capital. The question is, are the bonds taxable? AVe do not think they are. It has never been decided that municipal bonds are liable to taxation by the debtor municipality.
The learned counsel for the tax collecting department, in its brief, says “that it is true that the United States Supreme Court, in Murray v. Charleston, 96 U. S. 446, 24 L. Ed. 760, quoted Hamilton, and concurred in his view that an outstanding public bond could not be taxed until it was paid.” And counsel invite our attention to the fact that two of the justices of the Supreme Court dissented, and that their views disagreed with those of the majority.
AVe accept the opinion of the majority. It has undergone the test of time and experience, and is considered as authoritative.
It being well settled, we take it, that, in the absence of special and sufficient authority, a municipality has no authority to tax its own issues of bonds, particularly after the date of their issue, this brings us to the question whether there is a material difference, as relates to taxation, between certificates of indebtedness of the corporation and its bonds. AVe do not think that there is.
The principle that a municipality is without authority, after having issued certificates, *987 to impose a tax never before exacted, bas as much application to certificates as it has to bonds.
A bond is an obligation in writing to pay. It evidences a liability of the municipality.
The certificates also evidence a liability- of the corporation.
Why should bonds be held not liable to taxation, and certificates liable?
Not because one is less due than the other, or the contract less binding, or the certificate less evidence of an indebtedness.
These certificates show that the work has been performed. This being a fact, it next follows that the workman at maturity is entitled to his hire, without diminution subsequently imposed.
If, instead of issuing certificates, the city had issued a bond for the amount due, it would not have been liable to taxation.
Instead, the contractor received certificates. Is he now to be told that, not being a bondholder, he must pay a tax, although none was ever collected from any one prior to the date of his contract?
We think not.
Payment is the first thing in order, and then the amount paid falls within the terms of the statutes and of the Constitution requiring the payment of taxes on all property.
The rules which govern the right of private individuals in their dealing hold against the impairment of an obligation, or the imposition of a new burden diminishing the amount due.
Municipalities, as relates to their obligation, are subjected to the same rules. No deduction of a date subsequent is to be made, unless supported by expressed authority. We have not found any expressed authority to tax “public bonds” or “public credits.”
We do not go further than to hold that it is not consonant with business principles, be the debtor whom he may, for him to impose a burden at will, whereby the extent of his well-defined indebtedness may be diminished.
We agree with learned counsel for respondent that omission of taxing officers to tax property liable to taxation cannot prejudice the right of the state to tax the property thereafter, for in the presence of legal authority requiring such a taxation, of course, it would not be possible for taxing officers to avoid the duty of taxing on the ground of prior omission. But in this case there is no law, as we think, to authorize the collection. The omission to tax municipal bond property was referred to in 35 La. Ann. only as one of the elements going to show that the tax collecting department had not at any time previous found in the law authority to tax.
The court declared in the cited case that there was no authority to tax municipal bonds.
The Constitution of 1898, in the face of this judicial declaration, did not enlarge the scope of the prior Constitution upon that subject.
It ordained, as was set forth in the Constitution of 1879, that all property was subject to taxation, and further that no property was exempted from taxing, except that expressly mentioned, but no reference was made to the “bonds” and “credits” which the court, in the decision cited supra, held not liable.
With reference to the statute adopted subsequently (Act No. 170, p. 346, of 1898), we can only say that it must be interpreted by reference to the Constitution of 1898. Moreover, it does not follow, in view of the laws and of jurisprudence, that the lawmaking power, in taxing bonds and credits, intended to tax public bonds and public credits.
We conclude:
1. That a municipality is without right to tax its own bonds upon claim for taxes originating- after the bonds have been issued.
2. That a municipality is equally without right to tax certificates for debt incurred some time prior to the demand for taxes.
It is ordered, adjudged, and decreed that plaintiff’s demand is granted: that the claim for taxes by the defendant or respondent against relator is annulled, the judgment appealed from is avoided, annulled, and reversed, and all proceedings looking to the collection of relator’s claim.
The mandamus is made peremptory, and defendant’s demand for the payment of a tax is rejected, and the assessment of the property is decreed null and void.
Statement of the Case on Rehearing.
NICHOLLS, C. J.
The prayer of the relator’s petition was that a writ of mandamus issue to C. Taylor Gauche, state assessor *989 for the First District of the city of New Orleans, and the Board of Assessors of the state of Louisiana for the parish of Orleans, commanding him and them to strike from the assessment rolls and cancel, as null, the list or assessment on said rolls made against it under the item, “money loaned at interest, credits, etc.,” $27,000 in toto.
The grounds upon which the demand was predicated were: That, “for and in consideration of work to be performed and material to be furnished by it under contracts made by it with the city of New Orleans for laying-asphalt upon certain of its streets, the city had agreed to pay it for all asphalt laid at the rates written into the contracts. That it had been customary for many years past, and was still customary, for the city to issue to it and other contractors similarly situated certificates of the completion of the work, and of the acceptance thereof by the city, and stipulating amount due therefor by the city, with a description of the work done. That, under its contracts with the city, the latter had become obligated to it' for the full amount of one-third of the cost of the work, without deduction or diminution. That, as evidence for said indebtedness, the city had issued to relator certificates for the amount due by it, with (5 per cent, interest from the date of the same, which certificates had been and were public securities, negotiable in character, and were a debt or obligation of the municipal corporation for work done and performed and materials furnished for necessary works of public improvement, and were a moans and instrumentality whereby its governmental functions were performed, and were and had always been exempted from taxation as such. That although from time immemorial such certificates had never been considered a lawful subject or object for taxation, for the reason stated, yet the Board of Assessors of the state of Louisiana for the parish of Orleans and the city of New Orleans have assessed and listed against it for taxation of 1901 by the state of Louisiana and the city of New Orleans, “Money loaned on interest, all credits,” etc., $54,000, at a valuation of $27,000, intending thereby to assess for taxation, both municipal and state, the amount of the debt due to it by the city of New Orleans for paving done by it under the several contracts which it set forth in its petition.
“That these amounts were obtained from the books of the comptroller of the city of New Orleans as outstanding debts due by the city of New Orleans, bearing C per cent, per annum interest, and which, although budgeted for in future years, could not be reached for many years to come, and upon which neither principal nor any part of the interest had yet been paid, but, notwithstanding- said fact, and the inability of relator to collect either principal or interest, such assessment was intended to coerce relator into payment of the taxes thereon to the state of Louisiana and the city of New Orleans until the city of New Orleans sees fit to make provision for the payment thereof. That it had made timely protest against such assessment, and demanded the annulment of the same upon the ground that such certificates held by it were primarily debts due by the city under a local assessment, and were not taxable in the hands of the city. That said contracts were entered into with said city, and bids for executing same were made, predicated upon the fact of their nonliability to assessment and taxation in the past. That said certificates and similar certificates had never before been placed upon the rolls, and to do so, as was attempted by the board of assessors, impaired the obligation' of the contracts between it and the city of New Orleans, and was therefore null and void, and in contravention of the Constitutions of the state of Louisiana and of the United States, and the board was therefore estopped so to do in the premises. That their protest against the assessment and demand for the annulment made to both the board of assessors and the committee of the city council of New Orleans had been refused, and the state tax collector threatened to seize some of its property in payment of the tax.
“That the city of New Orleans was a creature of the state of Louisiana, created and organized as an instrument of government to carry out the purposes of the sovereign state of Louisiana, within certain territorial limits, and, in its said capacity, was a member of the body politic, and incurred said obligations and issued said certificates with the sanction and by the direction and authority *991 of said state, specifically set forth in the act of the Legislature thereof of 1896, known as Act No. 45, p. 46, of 1S96, and familiarly known as the city charter, and the amendments thereof.
“That the power to incur obligations for public improvements, to make contracts, and to use and have credits was necessary, and constituted a means of government by and for the state, through its said agency, and that at no time had there been any law, direction, intent, power, or authority to assess, tax, or burden obligations, contracts, or credits of the state or of the city of New Orleans, whether by assessment or taxation of the said contracts, obligations, or the certificates evidencing the same, for and by the said state and the city of New Orleans. That no such pretended assessment or taxation of said clontracts, obligations, or credits, whether evidenced by certificates or not, had ever been made or attempted to be made before, the attempted assessment complained of. That relator had ever been so informed and' believed, and under such understanding had contracted with the city. That the said credit certificates were not, had not been, and could not be so assessed, taxed, or burdened. That the said assessment of relator’s certificate for the year 1901 was and constituted a violation of the acts of the General Assembly incorporating the city of New Orleans, and ordinances and contracts thereunder entered into between the city of New Orleans and relator, and of the contract and engagement to pay said certificates, in principal and interest, absolutely, and without burden, deduction, or modification, and was not authorized by any law of the state of Louisiana, but, if it was contended that said assessment was properly made under the terms of Act No. 170, p. 346 of 1898, then said law was contrary to, and in violation of, the Constitution lof the state of Louisiana of 1879, art. 155, and of section 10 of article 1 of the Constitution of the United States, and, as such, impaired the obligation of the contracts of relator with the city, and devested vested rights.
“That the Board of Assessors had acted and were acting in the premises in violation of law, and contrary to the rights of relator and their duty, and beyond their power and jurisdiction, which was- limited to assessing things and persons which were legally the objects or subjects of taxation. That their acts were greatly injurious to relator, and worked a denial of justice.”
The District Court set aside an alternative writ of mandamus which had been issued, and refused to grant the mandamus applied for. On appeal this court, for the reasons assigned, reversed the judgment. It granted the mandamus applied for, and decreed null and void the assessment complained of. On application, a rehearing has been granted.
In the brief filed on that application, counsel say: “The importance of the case, as bearing upon the fisc of both the state and the city, is so great, and the decision herein rendered is so far-reaching in its consequences, that we respectfully suggest that it is, perhaps, the most important and serious tax case which has ever been presented to the court. If the decision stands, not only all debts due by the city for supplies and services, other than official work, etc., but all debts whatsoever due by the city to contractors, as well as all debts due by the state for levee work, supplies to the state charitable institutions, state educational establishments, penitentiary, etc., will escape taxation aggregating a large amount. The city is about to enter into contracts, through a board, to the amount of $1S,000,000 for sewerage and drainage and waterworks, and also for a new courthouse, to dost $575,000, and an expensive electric light plant; and there will be doubtless many future contracts for ifiacing miles of improved pavements on the streets, not to speak of contracts which may hereafter be entered into to construct a bridge across the Mississippi river, and other works of public impriovements. All these valuable contracts -with all municipalities, and public boards throughout the state will be exempted from taxation. The contractors will by it be exempt from city and state taxation, and an enormous amount—hundreds of thousands of dollars—will be lost to the state and to the municipal fisc.”
Counsel of defendants urge that we have erroneously accepted and announced as law the doctrine contended for by the plaintiff, that interest-bearing credits held by private individuals or corporations, evidenced by bonds or certificates of indebtedness, or existing merely as ordinary debts against the *993 state, or any of its municipal corporations, are, in tlieir hands, exempt, and beyond the grasp of legislative intent, power, and authority as objects or subjects of state and municipal taxation, by reason of their nature and character, as being governmental instrumentalities for carrying on the government, and therefore to be placed on the same footing, and to be considered in the same light, as public property; that to tax them would be to impair the obligations of the contracts under and in furtherance of which they were issued; that this court erred in declaring that there was no statutory authority existing at the time of the creation of the debts evidenced by those certificates, and at the time of their assessment by the defendants.
They maintain that the decision of this court in the premium bond case (Da Ponte v. Board of Assessors, 35 La. Ann. 651), and those in Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760, and in the Virginia cases in 102 U. S., do not sustain the doctrine that public debts or securities are not susceptible of being taxed at all. They say the case of Murray v. Charleston turned on two questions: First, could the city of Charleston, by ordinance passed on March 20, 1870, and on March 21, 1871, tax bonds issued by it prior to January 1, 1870, at which time there was no tax laid on the bonds? And, second, could it retain out of the interest coupons the taxes thus levied? And the Supreme Court of the United States decided that it could not do either. That in tbe Virginia eases, reported in 102 U. S., the state of Virginia, having on March 31st issued bonds and interest coupons receivable for all taxes and debts due to the state, could not, by passing an act on March 30, 1872, declare that they should not be received for taxes. That in those cases the court only decided that the city of Charleston and the state of Virginia could not by subsequent legislation impair the obligation of a prior existing contract. That this was as far as the decisions went. That in People v. Commissioners of Taxes and Assessments, 76 N. Y. 77, Murray v. Charleston was held and considered as not having-declared that municipal bonds were exempted from taxation where the tax was laid under laws existing prior to the issuing of the securities, and that this interpretation of Murray y. Charleston had been uniformly followed in United States v. Johnson County, 5 Dillon, 215, Fed. Cas. No. 15,489, Chew v. Smelting Co. (C. C.) 2 Fed. 5, 1 McCrary, 222, Louisiana State Lottery Co. v. Fitzpatrick, 3 Woods, 222, 260, Fed. Cas. No. 8,541, and Hance v. Railroad Co., 26 N. Y. 431; the effect of the decision being held to apply only to cases where the tax law was passed subsequent to the issuing of the public securities. Counsel assert that many states and municipal corporations have taxed their outstanding bonds, and the imposition of the tax has been sustained.
In this connection they cite 74 N. Y. 77, and quote Chief Justice Church as using the following language therein in reference to the taxation of bonds of the city of New York under a statute which taxed personal property: “In the case of the Niagara Fire Insurance Company, argued at the same time, the relator claims an exemption of $200,000 of bonds of the city of New York held by it, and this claim is predicated upon the recent decision of the Supreme Court of the United States in Murray v. Charleston. The decision has no application to this case. It was there held that an ordinance of the city of Charleston which imposed a tax of 2 per cent, upon its own bonds, bearing 6 per cent, interest, and required it to be reserved from the interest due to a foreign bondholder, impaired the obligation of a contract and was void. Here the bonds are taxed the same as other property. The contract with the city is in no wise interfered with. The city pays the principal and the interest according to the terms of its obligations, without deduction or abatement. No court has ever yet held that a state may not impose a general tax upon such property in the hands of individuals or corporations. The opinion expressly disclaims any such idea. It says: ‘A state may undoubtedly tax its creditors within its jurisdiction for the debt due to them, and regulate the amount of the tax by the rate of interest the debt bears, if its promise be left unchanged. A tax thus laid impairs no obligation assumed. It leaves the contract unchanged. Here the bonds are taxed under a general description of property according to value, *995 under a law'applicable to tbe whole state, and the terms of the contract are not affected.’ ”
. Counsel quote additionally Hall v. Middle-sex County Com’rs, 10 Alien, 100, as holding that bonds issued by the state of Massachusetts and the city of Albany were taxable as debts due to the taxpayer; Wilkes-Barre Deposit & Savings Bank v. City of Wilkes-Barre. 148 Pa. 601, 24 Atl. 111, as deciding that bonds issued by the city of Wilkes-Barre were liable to taxation; 23 N. Y., the Court of Appeals of New York as deciding on June, 1801 (prior to the act of Congress of 25th February, which exempted them) that United States bonds were taxable by the city of New York; State v. Howard County Court, 69 Mo. 454, the Supreme Court as holding that municipal bonds situated outside of the state for purposes of safekeeping, and not for the purpose of avoiding taxation, could not be taxed, but that they could be if within the state.
They say the Court of Errors and Appeals in New Jersey (Newark City Bank v. Assessors of Fourth Ward, 30 N. J. Law, 19) held that state bonds and United States bonds were exempt from taxation, but this was by reason of a special statute by the state of New Jersey'and a special act of Congress which expressly and severally exempted them.
Counsel quote the United States Supreme Court, in Fowler v. Rapley, 15 Wall. 333, 21 L. Ed. 35, as recognizing the taxability of state and municipal bonds, when, speaking of taxation, it said: “The same thing is true of public securities consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions. The former by general usage have acquired the character and are treated as property in the place where they are found, though removed from the domicile of the owner. The latter are treated as money wherever they are.” They quote from 7 L. R. A. 541, the language of the court interpreting a tax provision in the Constitution of North Carolina taxing “all property,” saying: “Upon what principle can it be contended that one who has no tangible property, but who owns $100,-000 in solvent credits, way enjoy all of the conveniences, safeguards, and other benefits of town life, and contribute nothing whatever to the payment of common expenses? Yet such will be the effect if the restricted interpretation contended for is to-prevail. It is clear that all who enjoy those privileges should pay their part of the expenses. For instance, the evidence of these solvent credits receives greater protection by the police of a town, and yet the police are to be paid only by those who own tangible property. No good reason can be assigned in support of such unjust discrimination, while every principle of justice and common fairness strictly forbids it.”
Referring to the decision of this court in the Da Ponte Case, 35 La. Ann. 651, defendants say that'true it is the premium bonds involved in that litigation were declared nontaxable, but this was because these particular bonds, which were issued in 1876, were sought to be taxed under an act-passed subsequently, in 1882, and, besides this, these bonds were issued in lieu of and to replace consolidated bonds of the city, which were themselves issued in 1852, under the Constitution of that year, which laid no restriction on the Legislature in regard to exemption from taxation, and the Legislature, in the exercise of its legitimate discretion, had by the seventh clause of section 15, No. 7, p. 38, of 1870, especially and in express terms exempted those consolidated bonds, from taxation; that the revenue acts of 1871. and 1872, which were in full force when the premiums were issued, in no wise affected the exemption of the consolidated bonds existing under prior laws; that the premium bonds issued in lieu of the consolidated bonds were exempt from taxation, and the attempt to tax them in 1882 under the statute of 1882, which only provided for the' taxation of “bonds liable to taxation,” could not be continued, as affecting the premium bonds, without impairing the obligation of' the contract. Defendants concede the correctness of the decision rendered, but urge that the remarks made on the general subject of the taxation of public bonds were not called for by the requirements of the case, and were obiter in character.
Referring to the case of City of Augusta v. Dunbar, 50 Ga. 389, which plaintiffs cited' in support of their position, defendants say that the most cursory reading would show that it was an attempt on the part of a *997 municipality to tax state bonds, and that in reference to this the court said: “We will not say a state cannot tax its own bonds, but we do say that the presumption is, in our opinion, very strong that a state has not conferred on another taxing power this right, if there be no express words so declaring; * * * and, in our judgment, such a power is not derivable from a mere general power to tax property.” Defendants say: “The tax sought to be maintained was under sections 797 and 800 of the Code of Georgia, taxing all real and personal property, so that the case has no pertinency or application to the one at bar.”
Plaintiff, in its brief, having used the following language: “It seems clear to us that when the sovereign invites the advancing of capital, labor, or their equivalents, for the purpose of promoting work of public utility or exercising governmental functions, that property passes out of the domain of private ownership, and has every attribute of public property, because used and utilized by the sovereign.
“Its status remains the same till again reduced to private possession, because while in the possession of the sovereign it is serving a public purpose, and the benefit the public derives from the use of that property exempts it from taxation, and the use stands in place thereof. But when returned to private ownership, then, and then only, does its status justify .the imposition of a tax; and such private possession contemplates control and disposition of the property, not merely an intangible credit against a sovereign”—and having cited in support of that proposition particular expressions found in Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760, and Da Ponte v. Board of Assessors, 35 La. Ann. 651, defendants attack very vigorously the correctness of the same. They say plaintiff’s counsel contend that the credit or claim, an incorporeal right owned by his client, is public property, because the city owes the debt, and that it is not private property. Altnough the origin of the debt is a service rendered to the city in the shape of paving-done by that company, yet the debt is the property of the latter; that is, the company. It is a credit right and claim belonging to the plaintiff. It can be transferred by assignment or sale, as is being constantly done. It can be seized by attachment, garnishment, or in execution by the creditors of the plaintiff in a proper case, as is frequently the case. If the company were to become insolvent, it would figure on the schedule in bankruptcy as a part of the company’s-assets. All debts are the property of the creditor, not of the debtor. “Public property is what belongs to the government—federal, state, or municipal. Things the property of the state are res publieae.” MeKeloz’s Civil Law, § 157; Ersk. Inst. 2-1-56. Public things are those the property of which is vested in a whole nation, and the use of which is allowed to all members of the nation, Civ. Code 1900, art. 453. Things which are for the common use of a city or other-place, as streets and public squares, are likewise public things. Private estates and fortunes are things which belong to individuals. Civ. Code 1900, art. 459. Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding, such as the rights of inheritance, servitudes, and obligations. Civ. Code 1900, art. 459. Incorporeal things, consisting only of a right, are not themselves strictly susceptible of the quality of movables or immovables. Nevertheless they are placed in one or the other of those classes according to the object to which they apply and the rules hereinafter established. Civ. Code, art. 470. “All things, corporeal and incorporeal, which have not the character of immovables by nature or by the disposition of the law, according to rules laid down in this title, are considered as movables.” Civ. Code 1900, art. 475.
Things susceptible of ownership, and which may be alienated by sale, exchange, donation, prescription, or otherwise. Civ. Code 1900, art. 483. Obligor or debtor is the person who has engaged to perform some obligation. Civ. Code 1900, art. 3556, No. 21, Ownership. Civ. Code 1900, arts. 491-493, 496. The word “property,” in Const, art. 7, § 9, relating to taxation, includes money, credits, investments, and other choses in action. Syllabus, 7 L. R. A. 539. Personal property. The right or interest which a person had in things personal. Bonner’s Law Dicty. Vol. 2, p. 327, verbo, “Personal Property.”
A debt is res alienum; that is, to the property of the creditor, and not of the debtor. *999 So we think the certificates (credits) herein assessed are the private, personal, movable property of the plaintiffs. That bonds or certificates issued by municipalities are the private property of the persons to whom they are issued seems to us as placed beyond question by the language of the United States Supreme Court in Re State Tax on Foreign Bonds, 16 Wall. 320, 21 L. Ed. 179. In that case it is said: “Corporations may be taxed like natural persons upon their property and business. But debts owing by corporations are not property of the debtors in any sense. They are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to creditors to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement.”
It is true that in Murray v. Charleston, 96 U. S. 440, 24 L. Ed. 760, the United States Suxireme Court said, “Debts are not property,” but this dictum is qualified by- the sentence following: “A nonresident creditor cannot be said to be, in virtue of a debt due to him, a holder of x>roperty within the city.” Thus construing the two sentences, it is obvious that all the court meant to say was that a debt due by a municipal corporation to a nonresident creditor, evidenced by a bond, and presumably in his possession at his foreign domicile, was not to be considered as property liable to taxation in a taxing district outside of the bondholder’s domicile. Referring to the contention of the plaintiff that the credit assessed in this case was not embraced for taxation purposes in the Constitution of 1S9S and the tax act of 1898, defendants say article 230 of the Constitution of 1898 provides that the following shall be exempt, and no other:
Section 1 of Act No. 170, p. 346, of 1898 (first clause), levies a tax “on the assessed valuation of all property situated within the state of Louisiana, except such as is expressly exempted by law, and the term ‘property,’ as herein used, means and includes * * * all personal property, * * * all rights, credits, bonds, and securities of all kinds, and all movable and immovable corporeal and incorporeal articles or things of value owned or controlled within the state of Louisiana by any person or any corporation whatsoever.”
Here we have a constitutional provision taxing all property not expressly exempted by that instrument. The right, credit, and claim in the present case is not expressly exempted, and the tax act taxes “all property * * * not expressly exempted by law,” and “property” is thus defined to mean and include “all personal property * * * and all rights, credits, bonds, and securities, of all kinds,” as well as “all corporeal and incorporeal articles or things of value.”
Surely this “right” or “credit” to claim and recover the money, the price of the paving, is covered by the statute, which could not be more explicit or comprehensive. The statute of 1882, on which the Da Ponte Case turned, contained no such provisions as to securities of all kinds, promissory notes, etc., nor the words “all movables and immovables, corporeal- and incorporeal articles or things of value owned and controlled within the state of Louisiana by any person or in any capacity whatsoever,” which are contained in the act of 1898. This last language seems to be broad enough, in all conscience, to cover the certificates involved in this case.
Replying to the contention of the plaintiff that to tax the credit evidenced by the certificates held by them would be to impair the obligations of the contracts which it entered into with the city, defendants maintain that the attempted taxation does not in any way violate any constitutional provision or impair the obligation of any contract; that the contracts on which the certificates issued were entered into December, 1898, and the certificates were issued in 1899; that at both of those dates the Constitution of 1898 was in full force, as were the revenue acts of 1890 and 1898, and therefore the statute (Act No. 170, p. 346, of 1898) did not impair any prior existing rights under the contracts; that the revenue acts of 1890 and *1001 1898, by intendment of law, were to be read and were read into any contract made after their passage; that laws which exist at the time and place of making the contract, and at the place where it is to be performed, af-> fecting its validity, construction, and enforcement and discharge, enter into and form part of after contracts (Walker v. Whitehead, 16 Wall. 314, 21 L. Ed. 357); that it is now well settled that a law in force when the contract is entered into does not impair its obligations (Am. & Eng. Ency. of Law [New Ed.] vol. 15, pp. 1046, 1047, note 1, with authorities). They cite Purcell v. Miner, 4 Wall. 515, 18 L. Ed. 435; Railroad Co. v. Rock, 4 Wall. 177, 18 L. Ed. 381; University v. People, 99 U. S. 309, 25 L. Ed. 387; Knox v. Exchange Bank, 12 Wall. 379, 20 L. Ed. 414; and Edwards v. Kearzey, 96 U. S. 595-603, 24 L. Ed. 793, which they declare was rendered at the same term, and subsequent to Murray v. Charleston. They say the whole question of laws, as affecting the impairment of obligations, was fully treated by the United States Supreme Court in Lehigh Water Co. v. Easton, 121 U. S. 388, 7 Sup. Ct. 916, 30 L. Ed. 1050, and Denny v. Bennett, 128 U. S. 480, 9 Sup. Ct. 134, 32 L. Ed. 491, and quote the court as saying in the former that it is equally clear that the law of the state to which the Constitution refers in that clause must be one enacted after the making of the contract the obligation of which is claimed to be impaired. It decided that a law passed in 1867 did not impair the obligation of a contract entered into in 1874. They assert that the court reaffirmed this position in Denny v. Bennett, 128 U. S. 494, 9 Sup. Ct. 136, 32 L. Ed. 491, saying: “The principle is well stated in Edwards v. Kearzey, 96 U. S. 595-605 [24 L. Ed. 793], in the following language: ^Tlie inhibition of the Constitution is wholly prospective. The state may legislate as to contracts thereafter made as they may see fit. It is only those in existence when the hostile law is passed that are protected from its effect.’ ”
Opinion.
There are two reasons which make it unnecessary for us to discuss the question whether a Legislature, in the absence of constitutional prohibition, has the right to tax “public property.” The first is that in Louisiana there is such constitutional prohibition, and the second is that, had it had such authority, the General Assembly has never attempted to avail itself of it, nor has the city levied a tax upon any of its property. We may say, however, that it seems to be generally accepted that in the absence of constitutional prohibition the General Assembly has the power and authority to tax public property, and, should it do so, the judiciary is almost powerless to control it. Such taxation, however, is recognized as being almost beyond the grasp of legislative intent, in view of its being barren of beneficial results. The judiciary therefore will never construe “public property” to have been included as objects of taxation in a revenue law unless the language employed is of such character as to make it imperative so to do.
Plaintiff’s counsel, in urging their grounds of objection to the taxation of the certificates which their client holds, use somewhat inaccurate language. We do not understand them to pretend that, as holder of such certificates, plaintiff does not own a property right, nor'that such certificates are in fact and in reality “public property.” We understand them to maintain that the right which they hold as owners of the certificates is not such property as is subject to taxation, for the reason that that right, so far as taxation is concerned, should be placed upon the same plane as public property stands. The theory of the plaintiff seems to be that by its contract it has reduced so much of its own property, by withdrawing and transferring it to the city; that the latter has the use of that property from the time it availed itself of it up to the time of the payment of the certificates; that during that period the certificates represent the property itself, which is being used by the corporation, and it would be beyond the power of the city to take and use the property, and, while so using it, make the plaintiff pay taxes upon it.
The plaintiff does not pretend that the labor by which the paving was done was its own personal labor. It does not pretend that the money which paid for the labor of other parties and for the materials which were furnished was not taxable at the time when it was used, because it had already been taxed, and the taxes upon it had been paid. It overlooks the fact that these certificates are in *1003 terest-bearing certificates, and that, if the city is using the pavement from the date of the certificates up to their maturity, it is paying, and the plaintiff is receiving, compensation during that period for the use of the same, through the interest. In view of that fact, it is difficult to see upon what equitable ground, if such could be considered, plaintiff would have claim to resist taxation.
When a person owning certain property transfers it to another, either by way of sale or loan, for an interest-bearing credit, the credit practically represents, so far as he is concerned, money at interest; and if the things sold or the money loaned would have been themselves taxable, had they remained in the original hands, there is no reason why the transfer or the loan should have carried with it, as a consequence, escape from taxation. There would be an element of uncertainty, of course, but this uncertainty enters as a factor in the assessment of credits.
If a person holding a note, bearing interest, which represents either the price of property sold to a private individual, or money loaned to him, has to pay taxes, no absolute reason can be assigned, that we can see, why his liability to taxation should be lessened because his debtor happens to be a municipal corporation instead of a private citizen. He derives profit from his contract in one case just as he does in the other.
To make such discrimination would be to create a class of specially privileged preferred creditors in the state, without any intrinsic reason for the discrimination, and relieve a large'number of persons in the community from the duty which all citizens owe to share in the burdens of government. Plaintiff says the effect of holding such certificates liable to taxation would only be that, in future contracts, bidders will base their bids upon probable amount of the taxes to be levied, and raise the same accordingly; that the city and property holders will ultimately have to pay the tax, with interest, the city’s debts being commensurately increased. That is certainly a forcible argument, but that matter is one for the Legislature, and not the courts, to determine. It might be that the General Assembly would be willing to accept that result if it should have, as an accompanying result, the placing of all property owners upon a plane of absolute equality and uniformity in fulfilling their direct primary obligations of contributing to the expenses of the government, and to the doing away of even an apparent discrimination between citizens.
We are of the opinion that credits of the character of those held by the plaintiff can be legally made liable to taxation, if specially and directly covered by the revenue laws, unless under special circumstances particular certificates are withdrawn from taxation by reason of protection under some contract obligation.
We agree with the plaintiff that until the General Assembly has, by statute, exercised its power of taxing such certificates, assessors cannot assess them. They are statute officers, and the statutes of the state levying taxes, and directing assessment of the objects liable to taxation, and defining) the duties of assessors, are at once the source and measure of the authority of those officers.
The Constitution may not only have affirmatively designated certain things as objects of taxation, but expressly directed the General Assembly to tax them. Notwithstanding this fact, it may have failed so to do. This failure by the Legislature would not warrant assessors in remedying its inaction by assessing those objects of their own motion. It is for the General Assembly, not the assessors, to initiate action in that matter. Article 224, Const. 1898; Thomas v. Gay, 169 U. S. 283, 18 Sup. Ct. 340, 42 L. Ed. 740; Da Ponte v. Board of Assessors, 35 La. Ann. 651; also Income Tax Case (Forman v. Board, 35 La. Ann. 825; Cotton Exchange v. Board, 35 La. Ann. 1156).
If true, as claimed by the plaintiff, that there is no statute of the state authorizing and directing the assessment and taxation of credits such as the plaintiff owns, that fact, being ascertained, would put an end to this controversy, and the judgment of the district court could not be sustained.
Defendants urge: “That the language and terms of Act No. 170, p. 346, of 1808, and article 225 of the Constitution of that year, place that matter beyond doubt. That article 230 enumerates the things which are exempt from taxation, declaring that they, and no other, shall be exempt. That the first section of Act No. 170, p. 346, of 1898, de *1005 dared that for the year 1898 and for each succeeding calendar year there were thereby levied annual taxes on the dollar of the assessed value of all property situated within the state of Louisiana, except such as was express ly exempted from taxation by law. That the section then proceeds to specify what the term ‘property’ means, and includes among the things specified the ‘cash value of all judgments, suits, and choses in action, all rights, credits, bonds, and securities of all kinds, promissory notes, open accounts, and other obligations, all cash, * * * all monies loaned at interest, * * * all movable and immovable corporeal and incorporeal articles or tilings of value owned and held and controlled within the state of Louisiana by any person in any capacity whatever.’ That the ninety-first section of the act defines the phrase ‘personal property’ or ‘movable property’ as meaning and including all things other than real estate which have any pecuniary value, and money, credits, investments in bonds, stocks, shares in joint-stock companies, or otherwise; the term ‘money’ or ‘monies’ as meaning and including bills Of exchange, bank bills, or other bills'or notes authorized to be circulated as money, whether in possession or subject to the draft of the depositor, or the person having the beneficial interest therein, on demand; the word ‘credit’ as including every claim and demand for money, labor, merchandise, and other valuable things.”
Article 203 of the Constitution of 1879, corresponding to article 225 of the Constitution of 1898, is similar to it. The language of these articles of the Constitution and that of the revenue acts of 1890 and 1898 is so broad and comprehensive as to make it difficult to meet the arguments of the defendants, and sustain the position of the plaintiff. To do so, it is necessary to hold that the General Assembly, in order to convey unmistakably to the courts its intention of subjecting credits such as are held by the plaintiff to taxation, should have inserted in the acts the word “public” before the word “credits.”
That rule was announced in the Da Ponte Case in reference to state and municipal bonds, and, though there have been numerous sessions of the General Assembly since that decision, the word has never been inserted in such acts. Under the circumstances, the rule announced has become, as to state and municipal bonds, a rule of property, and binds us to its continuance. It is urged that there has been no decision of this court requiring the use of that word in respect to ordinary floating debts of municipal corporations, and that the question as to those comes before us as res nova; that there is a great distinction between the obligations of a state or a city evidenced by bonds, and those evidenced by certificates which represent only ordinary debts. It may be that such a difference exists, but we do not think that either the General Assembly itself or the public have up to the present time recognized or acted upon that theory. So far from this, innumerable contracts have been entered into since the decision in the Da Ponte Case based upon a contrary opinion.
We do not think that we would be warranted, under the circumstances, in defeating the reasonable expectations of parties which have been based upon the judgment of this court. For the reasons herein assigned, the judgment heretofore rendered by us in this case is hereby decreed to remain unchanged, and in full force and effect.